IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY KURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF CHICAGO, | ) | |
| DET. SZWEDO (Star No. 20813), | ) | |
| DET. VALKNER (Star No. 20111), | ) | |
| DET. FOLINO (Star No. 20143), DET. | ) | |
| McDERMOTT (Star No. 21084), DET. | ) | |
| KOLMAN (Star No. 20448), DET. | ) | |
| CORDARO (Star No. 20680), OFFICER | ) | |
| FIGUEROA-MITCHELL (Star No. 20445), | ) | |
| OFFICER LOPEZ (Star No. 9341), | ) | |
| OFFICER SANCHEZ (Star No. 6439), | ) | |
| And As-Yet UNKNOWN CHICAGO | ) | |
| POLICE DEPARTMENT MEMBERS, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff, ANTHONY KURI, by and through his attorneys,

LOEVY & LOEVY, and complaining of Defendants CITY OF CHICAGO, DET.

SZWEDO (Star No. 20813), DET. VALKNER (Star No. 20111), DET. FOLINO (Star

No. 20143), DET. McDERMOTT (Star No. 21084), DET. KOLMAN (Star No. 20448),

DET. CORDARO (Star No. 20680), OFFICER FIGUEROA-MITCHELL (Star No.

20445), OFFICER LOPEZ (Star No. 9341), OFFICER SANCHEZ (Star No. 6439), and

as-yet UNKNOWN CHICAGO POLICE DEPARTMENT MEMBERS (hereinafter,

collectively "Defendants"), and states as follows:

**Introduction**

1.      By this action, Plaintiff seeks redress for having spent more than three years in the Cook County Jail for a murder he did not commit, a crime that another man has since confessed to having committed.

2.      This action is brought pursuant to 42 U.S.C. §1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

3.      This Court has jurisdiction of the action pursuant to 28 U.S.C. §§1331 and 1367.

4.      Venue is proper under 28 U.S.C. §1391(b).  On information and belief, all Individual Defendants reside in this judicial district and Defendant City is a municipality located in this judicial district.  The events giving rise to the claims asserted herein occurred within the district.

**Factual Allegations**

5.      In the early morning hours of July 24, 2009, a shooting occurred on the 4600 block of North Central Avenue in Chicago, Illinois.

6.      According to witnesses who gave reports to the on-scene officers immediately following the shooting, a male Hispanic rode up on a bicycle and fired 5-6 shots at a minivan double-parked in the street.

7.      The driver of the car, Gaurav Patel, was fatally injured.  Tony Fernandez, who was seated on the passenger side of the van in the middle row of seats, sustained serious injuries.  A third passenger, Zae Russell, who was seated in the third row of seats behind the driver, escaped unharmed.

8. The man on the bike who shot and killed Patel was David Gomez. Gomez has since confessed to the murder, stating that he was alone at the time.

9. After the shooting, Gomez ran away, leaving his bike at the scene.

10. Paramedics arrived on scene and transported Patel and Fernandez to the hospital. Russell, the victim who escaped unharmed, was arrested on scene by one or more of the Defendants, placed in handcuffs, and transported to the police station for questioning.

11. One or more of the Defendants proceeded to accuse Russell of committing the shooting, stating that the shots could have been fired from inside the car. Russell was released later that day after hours of questioning.

12. Eight days after the shooting, on August 1, 2009, one or more of the Defendants obtained photographs of known gang members and showed them to Fernandez, who remained hospitalized from his injuries. Fernandez could not identify anyone in the pictures as being the shooter.

13. On August 2, 2009 Defendants reviewed POD footage of an altercation that occurred previously between the victims, Patel, Fernandez and Russell, and Plaintiff and David Gomez. Although this POD footage did not show any footage of the July 24 shooting, Defendants seized upon it and used the footage to develop a theory of the case that included both Gomez as the shooter and Plaintiff as an accomplice.

14. To further this theory, Defendants falsely indicated in a handwritten police report taken while Russell was held at the station on July 24, that Russell had supposedly witnessed two male Hispanics in white t-shirts involved in the shooting. This was false. On-scene investigators took the statements of three independent witnesses immediately

3

following the shooting, yet Russell's statement taken by one or more of the Defendants after the shooting is the only one that falsely implicates multiple persons involved with the shooting and thereby fits with the Defendants' false theory.

15. On August 2, 2009 Defendants showed Russell a photo spread that included Plaintiff, and told Russell that they "knew" that Plaintiff was involved in the shooting. Defendants further explained to Russell that if he picked Plaintiff from the photo spread as having been riding on the back of the shooter's bike at the time of the shooting, Russell would be able to help his friend Fernandez because the Defendants could give Fernandez money for being the victim of a crime. In this way, the Defendants improperly secured that Russell would pick out Plaintiff from the photo spread, which he did.

16. Russell then spoke with Fernandez, who was still hospitalized, and relayed to him the information that Defendants had told him; namely, to pick out Plaintiff from a photo spread as having been riding on the back of the shooter's bike at the time of the shooting. That same day, on August 2, 2009, the Defendants visited Fernandez in the hospital and Fernandez picked out Plaintiff from the photo spread, as instructed.

17. Based only on these two false photo identifications, an investigative alert was issued with probable cause for Plaintiff's arrest.

18. On August 5, 2009 Plaintiff was arrested by the Area 5 Robbery Mission Team pursuant to the investigative alert. Plaintiff denied any involvement in the shooting, and offered to take a polygraph test. Defendants then falsely told Plaintiff that he had allegedly failed the polygraph test, which he did not, all in an effort to coerce Plaintiff into providing Defendants with more information, which he did not have.

4

19.    There was no physical evidence linking Plaintiff to the scene of the shooting, and there were no witness accounts—aside from the falsely procured ones—that placed him at the scene.  The Defendants could not locate Russell, and Fernandez remained hospitalized, so a live line-up could not be conducted on August 5.  Plaintiff was then allowed to leave.

20.    On August 8, 2009, two independent witnesses came forward and voluntarily gave statements to the Defendants to aid in their investigation of the July 24 shooting.  Both witnesses stated that there was only person involved in the shooting, just as the original witnesses had reported on the night of the shooting.

21.    On the same day, Russell was located and transported to the police station where he was fed details of the Defendants' version of the shooting, and gave a recorded statement implicating two persons, including Plaintiff, in the July 24 shooting.

22.    Based only on the false photo identifications and the false statement of Russell, an arrest warrant was issued for Plaintiff.

23.    Plaintiff was re-arrested in Rochelle, Illinois on September 8, 2009 and transported to Chicago to be questioned by one or more of the Defendants, where he again denied any involvement in the shooting.  Despite over a month of further investigation, there was still no physical evidence linking Plaintiff to the scene of the shooting, and there were still no witness accounts—aside from the falsely procured ones—that placed him at the scene.

24.    At the time of Plaintiff's re-arrest, Russell could not be located by Defendants, and Fernandez, now released from the hospital, could not be located either; thus, a live line-up could not be conducted with the Defendants' only two witnesses.

Despite this, Defendants caused charges to be brought against Plaintiff for the July 24 murder of Patel and attempted murder of Fernandez and Russell.

25.     Plaintiff spent three and a half years in maximum security divisions in the Cook County Jail where he contested the charges at every step.  Within the three and a half years, forensic testing was performed on the bike that was left behind by the shooter on July 24.  Plaintiff's fingerprints were not found on the handlebars, and his DNA was not found anywhere on the bike.

26.     Moreover, the bike left at the scene of the shooting did not have pegs on the back for carrying an additional rider, a fact which contradicted the false statements Defendants had procured from the aforementioned witnesses.

27.     With the knowledge that he was facing serious prison time if convicted of the charges, Plaintiff experienced daily hardship and stress, and additional damages associated with having to live in the harsh maximum security divisions at the Cook County Jail.

28.     Plaintiff's bench trial began on March 8, 2012 in front of the Honorable Judge Sheehan.  Plaintiff's co-defendant was David Gomez, the true, and sole, perpetrator.

29.     Both Fernandez and Russell testified at Plaintiff's criminal trial.

30.     Russell testified that when Defendants visited him with photo arrays, he did not make an actual identification because, "[t]he police officer already told me who they were." Russell further testified that when he was shown the photo arrays Defendants "said that they knew who it was" and that "they said they just needed me to say that these is them."

6

31.     Russell then testified that Defendants told him, "if I was to say that it was them [Gomez and Plaintiff] then they was going to give Tony Fernandez money for being a victim of a crime. So they told me to really just help Tony out."

32.     Fernandez corroborated Russell's testimony when he stated on the witness stand that the only reason that he picked out both Plaintiff and Gomez from the Defendants' photo arrays as being involved in the shooting is because his friend, Russell, told him to.  Fernandez testified truthfully that there was only one shooter that he saw "a little bit."

33.     After all of the evidence was presented, Plaintiff was found not guilty of all of the charges against him, in a manner indicative of his innocence.

34.     Gomez has since confessed to the shooting on July 24, 2009, and has stated, truthfully, that he acted alone.  Notwithstanding the Defendants' falsely procured statements, that there never was a second perpetrator.

### Count I—42 U.S.C. Section 1983
### Violation of Due Process

35.     Each of the Paragraphs of this Complaint is incorporated herein.

36.     As described more fully above, the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

37.     In the manner described more fully above, the Defendants deliberately withheld exculpatory evidence, and fabricated false reports, false testimony, and other evidence. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued, and denied him his constitutional right to a fair trial in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

7

38.     As of result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but not limited to emotional distress.

39.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

40.     The misconduct described in this Count by Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department in that as a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference.

41.     As a result of the unjustified violation of Plaintiff's rights by Defendants, undertaken and allowed to continue due to the Defendant City's policies and practices as implemented by its police department, as described above, Plaintiff suffered injuries, including but not limited to physical and emotional distress.

**Count II—42 U.S.C. Section 1983**
**False Arrest / Unlawful Detention**

42.     Each of the Paragraphs of this Complaint is incorporated herein.

43.     As described more fully above, the Defendant Officers falsely arrested and unlawfully detained Plaintiff twice without justification and without probable cause.

44.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

45.     The misconduct described in this Court was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

46.     As a result of the unjustified violation of Plaintiff's rights by the Defendants, Plaintiff has suffered injury, including emotional distress.

47.     The misconduct described in this Count by Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department in that as a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference.

48.     As a result of the unjustified violation of Plaintiff's rights by Defendants, undertaken and allowed to continue due to the Defendant City of Chicago's policies and practices as implemented by its police department, as described above, Plaintiff suffered injuries, including but not limited to physical and emotional distress.

### Count III—42 U.S.C. Section 1983
### Conspiracy to Deprive Constitutional Rights

49.     Each of the Paragraphs of this Complaint is incorporated herein.

50.     Defendants reached an agreement among themselves to unlawfully detain and deprive Plaintiff of his constitutional rights, all as described in the various paragraphs of this Complaint.

51.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

52.     As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated and he suffered injury, including but not limited to emotional distress.

9

53. The misconduct described in this Court was undertaken with malice, willfulness, and reckless indifference to the rights of others.

54. The misconduct described in this Count by Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department in that as a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference.

55. As a result of the unjustified violation of Plaintiff's rights by Defendants, undertaken and allowed to continue due to the City of Chicago's policies and practices as implemented by its police department, as described above, Plaintiff suffered injuries, including but not limited to physical and emotional distress

## Count IV—42 U.S.C. Section 1983
## Failure to Intervene

56. Each of the Paragraphs of this Complaint is incorporated herein.

57. As described more fully above, one or more Defendants had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined, but failed to do so.

58. Defendants' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights. As a result of Defendants' failure to intervene, Plaintiff suffered injury, including emotional distress.

59. The misconduct described in this Count by Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department in that as a matter of both policy and practice, the Chicago Police Department directly encourages, and is

thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference.

60.     As a result of the unjustified violation of Plaintiff's rights by Defendants, undertaken and allowed to continue due to the City of Chicago's policies and practices as implemented by its police department, as described above, Plaintiff suffered injuries, including but not limited to physical and emotional distress.

## Count V—State Law Claim
### False Imprisonment

61.     Each of the Paragraphs of this Complaint is incorporated herein.

62.     Twice, Plaintiff was arrested and imprisoned, and thereby had his liberty to move about unlawfully restrained, despite Defendants' knowledge that there was no probable cause for doing so.

63.     Defendant Officers' actions set forth above were undertaken intentionally, with malice and reckless indifference to Plaintiff's constitutional rights and to the rights of others.

64.     As a result of the above-described wrongful infringement of Plaintiff's rights, Plaintiff suffered injury, including emotional distress.

## Count VI—State Law Claim
### Malicious Prosecution

65.     Each of the Paragraphs of this Complaint is incorporated herein.

66.     In the manner described more fully above, Plaintiff was improperly subjected to judicial proceedings unsupported by probable cause to believe that he had committed a crime.

11

67.     The judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of his innocence.

68.     Specifically, the Defendant Officers accused Plaintiff of criminal activity knowing that those accusations were without probable cause and made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings.

69.     The Defendant Officers made statements regarding Plaintiff's alleged culpability with knowledge that the statements were false and perjured. In so doing, the Defendant Officers fabricated evidence and withheld exculpatory information.

70.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

71.     As a proximate result of this misconduct, Plaintiff suffered injuries, including but not limited to emotional distress.

### Count VII – State Law Claim
### Civil Conspiracy

72.     Each of the Paragraphs of this Complaint is incorporated herein.

73.     As described more fully in the preceding paragraphs, the Defendant Officers, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

74.     In furtherance of the conspiracy, the Defendant Officers committed overt acts and were otherwise willful participants in joint activity.

75.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

12

76.     As a proximate result of the Defendant Officers' conspiracy, Plaintiff suffered damages, including emotional distress and anguish, as is more fully alleged above.

**Count VIII—State Law Claim**
**Respondeat Superior**

77.     Each of the Paragraphs of this Complaint is incorporated herein.

78.     In committing the acts alleged in the preceding paragraphs, the Defendant Officers were members and agents of the Chicago Police Department acting at all times within the scope of their employment.

79.     Defendant City of Chicago is liable as principal for all torts committed by its agents.

**Count IX—State Law Claim**
**Indemnification**

80.     Each of the Paragraphs of this Complaint is incorporated herein.

81.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

82.     The Defendant Officers are or were employees of the City of Chicago Police Department who acted within the scope of their employment in committing the misconduct described above.

WHEREFORE, Plaintiff, ANTHONY KURI, respectfully requests that this Court enter judgment in his favor and against Defendants CITY OF CHICAGO, DET. SZWEDO (Star No. 20813), DET. VALKNER (Star No. 20111), DET. FOLINO (Star No. 20143), DET. McDERMOTT (Star No. 21084), DET. KOLMAN (Star No. 20448),

13

DET. CORDARO (Star No. 20680), OFFICER FIGUEROA-MITCHELL (Star No. 20445), OFFICER LOPEZ (Star No. 9341), OFFICER SANCHEZ (Star No. 6439), and as-yet UNKNOWN CHICAGO POLICE DEPARTMENT MEMBERS, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against the Defendants in their individual capacity, as well as any other relief this Court deems just and appropriate.

## Jury Demand

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted,

s/ Julie Thompson
Julie Thompson
*One of the Attorneys for Plaintiff*

Arthur Loevy
Jon Loevy
Julie Thompson
Loevy & Loevy
312 N. May St., Suite 100
Chicago, Illinois 60607
(312) 243-5900

Scott Frankel
Frankel & Cohen
53 W. Jackson Blvd., Suite 1615
Chicago, Illinois 60604
(312) 759-9600

14