**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY KURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13 C 1653 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| THE CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Anthony Kuri brings a four-count First Amended Complaint against the City of Chicago (the "City") and nine individual City policy officers (the "defendant officers"), pursuant to 42 U.S.C. § 1983, alleging violations of his right to a fair trial under the Fourteenth Amendment's Due Process Clause, false arrest in violation of the Fourth Amendment, conspiracy to deprive him of his constitutional rights, and failure to intervene to prevent the violation of his constitutional rights, along with state-law claims, including false imprisonment and malicious prosecution. Kuri's claims are based on his allegation that he spent over three years in the Cook County Jail awaiting trial for a murder he did not commit. The defendants have moved to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). The defendants argue that Kuri's claims are either barred by the relevant statute of limitations or fail to state a claim upon which relief can be granted. For the reasons explained below, the court grants the motion in part and denies it in part. Counts II and V of the complaint are dismissed, but the motion is denied as to the remaining counts.

# I. FACTS

The court accepts all well-pleaded allegations in Kuri's complaint as true for purposes of the motion to dismiss. *See, e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). In the early morning hours of July 24, 2009, a shooting occurred on the 4600 block of North Central Avenue in Chicago, Illinois. According to witnesses who gave reports to officers immediately following the shooting, a Hispanic male rode up on a bicycle and fired five or six shots at a minivan double-parked in the street. The driver, Gaurav Patel, was fatally injured. Tony Fernandez, seated on the passenger side of the van in the middle row of seats, sustained serious injuries. A third passenger, Zae Russell, who was seated in the third row of seats behind the driver, escaped unharmed.

The man on the bike who shot and killed Patel was David Gomez. Gomez eventually confessed to the murder, stating that he was alone at the time of the crime. After the shooting, Gomez ran away, leaving his bike at the scene. Paramedics arrived and transported Patel and Fernandez to the hospital. Russell, the victim who escaped unharmed, was arrested by one or more of the defendant officers, placed in handcuffs, and transported to the police station for questioning.

One or more of the defendant officers initially accused Russell of committing the shooting, stating that the shots could have been fired from inside the car. Russell was released later that day after hours of questioning. Eight days after the shooting, on August 1, 2009, one or more of the defendant officers showed photographs of known gang members to Fernandez, who remained hospitalized from his injuries. Fernandez could not identify anyone in the pictures as being the shooter.

On August 2, 2009, the defendant officers reviewed footage of a previous altercation between the victims (Patel, Fernandez and Russell) and Kuri and Gomez. The defendant officers relied on the footage to develop a theory of the case that involved Gomez as the shooter and Kuri as an accomplice.

On-scene investigators took the statements of three independent witnesses immediately following the shooting. The defendant officers also took a statement from Russell. The defendant officers indicated in a handwritten police report made while Russell was held at the station on July 24, 2009, that Russell had witnessed two male Hispanics in white t-shirts involved in the shooting. None of the statements by the independent witnesses, however, indicated that multiple persons were involved.

On August 2, 2009, the defendant officers showed Russell a photo spread that included Kuri. They told Russell that they "knew" that Kuri was involved in the shooting. The defendant officers further explained to Russell that if he picked Kuri from the photo spread as having been riding on the back of the shooter's bike at the time of the shooting, he would be able to help his friend Fernandez because the defendant officers could give Fernandez money for being the victim of a crime. Russell picked out Kuri from the photo spread.

Russell then spoke with Fernandez, who was still hospitalized, and relayed to him that the defendant officers had told him to pick out Kuri from a photo spread as having been riding on the back of the shooter's bike at the time of the shooting. That same day, on August 2, 2009, the defendant officers visited Fernandez in the hospital, and Fernandez picked out Kuri from the photo spread, as instructed.

Based only on these two photo identifications, an investigative alert was issued for Kuri's arrest. He was arrested on August 5, 2009, by the Area 5 Robbery Mission Team. He denied

any involvement in the shooting and offered to take a polygraph test. The defendant officers falsely told him that he had failed the polygraph test, in an effort to coerce him into providing more information, which he did not have. No physical evidence linked Kuri to the scene of the shooting, and there were no witness accounts—aside from those of Russell and Fernandez—that placed him at the scene. The defendant officers could not locate Russell, and Fernandez remained hospitalized, so a live line-up could not be conducted on August 5, 2009. Kuri was allowed to leave.

On August 8, 2009, two independent witnesses came forward and voluntarily gave statements to the defendant officers regarding the July 24, 2009, shooting. Both witnesses stated that there was only one person involved in the shooting, just as the three independent witnesses had reported on the night of the shooting.

On the same day, Russell was located and transported to the police station, where he was fed details of the defendant officers' version of the shooting and gave a recorded statement implicating two persons, including Kuri, in the shooting. Based only on the photo identifications and Russell's statement, an arrest warrant was issued for Kuri. He was re-arrested in Rochelle, Illinois on September 8, 2009, and transported to Chicago to be questioned by one or more of the defendant officers. He again denied any involvement in the shooting. There was still no physical evidence linking Kuri to the shooting, and no witness accounts—aside from those of Russell and Fernandez—placed him at the scene. As neither Russell nor Fernandez could be located by the defendant officers, a live line-up could not be conducted with the only two witnesses who had identified Kuri.

The defendant officers caused charges to be brought against Kuri for the July 24, 2009, murder of Patel and the attempted murder of Fernandez and Russell. Kuri spent three and a half

years in maximum security divisions of the Cook County Jail, where he contested the charges at every step. Faced with the knowledge that serious prison time would result if he were convicted of the charges, Kuri experienced daily hardship and stress, and additional damages associated with having to live under harsh conditions at the Cook County Jail.

During that time, forensic testing was performed on the bike that was left behind by the shooter on July 24, 2009. Kuri's fingerprints were not found on the handlebars, and his DNA was not found anywhere on the bike. Moreover, the bike left at the scene of the shooting did not have pegs on the back for carrying an additional rider, a fact which contradicted the false statements the defendant officers had procured from Russell and Fernandez.

Kuri's bench trial began on March 8, 2012, in front of the Honorable Judge Sheehan. His co-defendant was David Gomez. Fernandez and Russell testified. Russell testified that when the defendants visited him with photo arrays, he did not make an actual identification because, "[t]he police officer already told me who they were." Russell further testified that when he was shown the photo arrays, the defendant officers "said that they knew who it was" and that "they said they just needed me to say that these is them." Russell then testified that the defendant officers told him, "if I was to say that it was them [Gomez and Kuri] then they was going to give Tony Fernandez money for being a victim of a crime. So they told me to really just help Tony out." Fernandez corroborated Russell's testimony when he testified that the only reason that he picked out both Kuri and Gomez from the photo arrays is because Russell told him to. Fernandez testified that there was only one shooter that he saw "a little bit."

Kuri was found not guilty of all charges against him. Gomez later confessed to the July 24, 2009, shooting and stated that he acted alone.

Based on these alleged facts, Kuri brings the following claims. In Count I, he alleges a violation of his Fourteenth Amendment right to due process, claiming that the defendants deprived him of his right to a fair trial by withholding exculpatory evidence and fabricating false reports, testimony, and other evidence. In Count II, he claims that he was twice falsely arrested and unlawfully detained. In Count III, he alleges that the defendants conspired to unlawfully detain him and deprive him of his constitutional rights. In Count IV, he alleges that the defendants failed to intervene to prevent the violation of his constitutional rights. Kuri claims, pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), that the violations of his constitutional rights occurred pursuant to the policy and practice of the Chicago Police Department, which failed to adequately train, supervise, and control its officers.

Counts V-VII allege violations of state law. Count V alleges false imprisonment. Count VI alleges malicious prosecution, based on the fact that the defendant officers made statements about Kuri, knowing they were false, with the intent of instituting and continuing judicial proceedings against him without probable cause. Count VII alleges a civil conspiracy, and Counts VIII and IX allege *respondeat superior* liability on the part of the City and seek indemnification of the defendant officers by the City.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together.").

6

For purposes of the motion to dismiss, the court takes all facts alleged by the claimant as true and draws all reasonable inferences from those facts in the claimant's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

**III. ANALYSIS**

**A. Due Process (Count I)**

In Count I, Kuri claims that the defendant officers violated his constitutional right to a fair trial, in violation of the Fourteenth Amendment's Due Process Clause, by fabricating false reports, false testimony, and other evidence and by withholding exculpatory evidence. He further claims that this misconduct was undertaken pursuant to the policy and practice of the Chicago Police Department, which directly encourages such misconduct by failing to train, supervise, and control its officers. *See generally*, *Monell*, 436 U.S. 658.

The defendants argue that Kuri's due process claim fails because the alleged bases for his claim, the fabrication of evidence and withholding of exculpatory evidence, are not plausible bases for a due process claim. According to the defendants, the allegations that the defendant officers falsified reports and fabricated evidence are, in essence, a malicious prosecution claim that must be brought under Illinois law, not a § 1983 due process claim. Furthermore, the defendants argue, the allegations that the defendant officers deliberately withheld evidence do not state a viable cause of action under *Brady v. Maryland*, 373 U.S. 83 (1963), because Kuri was acquitted at trial.

1. Fabrication of Evidence

The defendants argue that Kuri's claim that the defendant officers fabricated evidence that led to his prosecution may proceed only as a state-law malicious prosecution claim, not as a

federal due process claim. As the defendants point out, the Seventh Circuit has stated on various occasions that the fabrication of evidence by police officers that allegedly denies the plaintiff a fair trial can support a malicious prosecution claim that arises under state law, but not a § 1983 claim. In *Fox v. Hayes*, for example, the Seventh Circuit explained that a plaintiff's attempt to allege that the fabrication of false statements by police detectives which led to his prosecution violated the Due Process Clause was an improper attempt at "shoe-horning" Fourth Amendment and malicious prosecution claims "into the more general protections of the Fourteenth Amendment." 600 F.3d 819, 841 (7th Cir. 2010) (citing *Brooks v. City of Chi.*, 564 F.3d 830, 833 (7th Cir. 2009), and *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2010)). The Seventh Circuit does not recognize federal malicious prosecution claims where state tort law supplies a similar cause of action. *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001) ("The existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution."). Thus, a plaintiff "cannot invoke the substantive due process clause where state laws provide an adequate postdeprivation remedy for the complained-of conduct." *Fox*, 600 F.3d at 841.

Courts in this district have repeatedly concluded that Seventh Circuit precedent forecloses § 1983 actions premised on the alleged falsification of police reports or fabrication of evidence. *See, e.g.*, *Saunders v. City of Chi.*, Nos. 12 C 9158, 12 C 9170, 12 C 9184, 2013 WL 6009933, at *8 (N.D. Ill. Nov. 13, 2013) (Dow, J.); *Cihak v. City of Chi.*, No. 12 C 10418, 2013 WL 3944411, at *3 (N.D. Ill. July 31, 2013) (Der-Yeghiayan, J.); *Cruz v. City of Chi.*, No. 8 C 2087, 2013 WL 3864234, at *4-5 (N.D. Ill. July 24, 2013) (Dow, J.); *Padilla v. City of Chi.*, 932 F. Supp. 907, 926-27 (N.D. Ill. 2013) (Shadur, J.).

Kuri responds that the defendant officers' actions violated his right to a fair trial. As supplemental authority, Kuri cites *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012). *Whitlock* contains the statement that "the police defendants violated [the plaintiffs'] right not to have police officers manufacture false evidence." *Id.* at 575. According to Kuri, this supports his argument that the fabrication of evidence by police officers violates the Due Process Clause of the Fourteenth Amendment.

Despite *Whitlock*'s seemingly helpful language, it did not directly address the issue at hand. Rather, the court concluded that it lacked jurisdiction over the police officer defendants' appeals because they raised no purely legal question. *Id.* at 576. It added, in dicta, "If we are mistaken about the jurisdictional issue, we add that we see serious problems with the police defendants' position." *Id.* at 575. Insofar as it briefly discussed the record below, the court characterized the alleged violations as a failure by the police officer defendants to disclose exculpatory evidence. *See id.* at 575-76. Nowhere in the opinion did the court indicate that the potentially viable claim based on the alleged fabrication of evidence was a free-standing substantive due process claim, rather than a *Brady* claim.[1]

Most district courts presented with the argument made by Kuri in this case have concluded that *Whitlock* does not create space for a federal due process claim based on evidence fabrication. *See, e.g.*, *Saunders*, 2013 WL 6009933, at *8 ("The Court is not persuaded by Plaintiffs' argument that the Seventh Circuit's decision in [*Whitlock*] repudiates well-established law in this circuit and creates a stand-alone § 1983 due process claim for evidence fabrication.").

---

[1]     *Whitlock* went on to explain that a prosecutor who allegedly fabricated evidence in the investigatory stage of a prosecution, before probable cause existed, was not entitled to absolute prosecutorial immunity at the motion to dismiss stage of the proceedings. *Id*. at 579-80. Nor was the prosecutor entitled to qualified immunity, because the alleged fabrication of evidence violated clearly established rights. *Id.* at 580-81.

Moreover, in *Alexander v. McKinney*, decided after *Whitlock*, the Seventh Circuit again stated that it has "squarely rejected" a plaintiff's efforts "to piece together an amorphous substantive due process claim from the remains of his forgone or otherwise unavailable constitutional and state law claims." 692 F.3d 553, 557 (7th Cir. 2012). The fact that the court cited *Brooks* and *McCann*, along with *Whitlock*, indicates that *Whitlock* did not overturn those precedents. *See id.*

The court agrees with the defendants that Kuri cannot plead, pursuant to § 1983, a cognizable federal due process claim stemming from the fabrication of evidence by the defendant officers. Accordingly, the court dismisses Kuri's due process claims insofar as they stem from allegations of evidence fabrication.

### 2. *Brady* Claim

Under *Brady*, the government violates the Due Process Clause of the Fourteenth Amendment when it "fails to disclose evidence materially favorable to the accused." *Mosley v. City of Chi.*, 614 F.3d 391, 397 (7th Cir. 2010) (citing *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006)). The duty to disclose "extends to the police and requires that they similarly turn over exculpatory . . . evidence to the prosecutor." *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008) (citing *Youngblood*, 547 U.S. at 870). The elements of a *Brady* violation are: "(1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued—in other words, 'materiality.'" *Id.* at 566-67. Evidence is "suppressed" where it is not disclosed "in time for the defendant to make use of it," and it "was not otherwise available to the defendant through the exercise of reasonable diligence." *Id.* at 567. "[F]avorable evidence is material . . . if there is a 'reasonable probability' that, had the evidence been disclosed . . . the result of the proceeding would have been different."

*Bielanski v. Cnty. of Kane*, 550 F.3d 632, 643-44 (7th Cir. 2008) (internal quotation marks omitted).

The defendants argue that Kuri cannot maintain a claim for withholding of exculpatory evidence because he was acquitted at trial, and thus he cannot show that prejudice ensued from any withheld evidence. Moreover, they argue, the evidence supposedly suppressed came out at trial, in time for Kuri to make use of it, when Russell and Fernandez testified that the defendant officers told them to identify Kuri as involved in the shooting. Kuri responds that he endured considerable distress as a result of the charges levied against him, which were based on the concealed conduct of the defendant officers in manipulating Russell and Fernandez into falsely identifying him, and the fact that he was acquitted does not mean that his trial was "fair."

The Seventh Circuit has not decided whether a *Brady* claim can be viable when a trial results in an acquittal. *See Mosley*, 614 F.3d at 397-98 (reserving the question "for a later case" in which the evidence withheld "would have altered the decision to go to trial"). Recently, in *Alexander v. McKinney*, the court stated:

> [W]e have expressed doubt that an acquitted defendant can ever establish the requisite prejudice for a Brady claim. *See* [*Bielanski*, 550 F.3d at 644]. Nevertheless, we have entertained the possibility that prejudice could be established if an acquitted defendant showed that disclosure of the suppressed evidence would have altered the decision to go to trial. *See* [*Parish v. City of Chi.*, 594 F.3d 551, 554 (7th Cir. 2009)]; *Bielanski*, 550 F.3d at 644-45.

692 F.3d at 556; *see also Petrishe v. Tenison*, No. 10 C 7950, 2013 WL 5645689, at *4 (N.D. Ill. Oct. 15, 2013) (Holderman, J.) (concluding that plaintiff sufficiently alleged the existence and suppression of exculpatory evidence that would have altered the decision to go to trial).

In other words, a plaintiff may have a "*Brady*-type due process claim" where favorable evidence is suppressed by the government, and "'there is a reasonable probability that prejudice ensued.'" *Parish*, 594 F.3d at 554 (quoting *Carvajal*, 542 F.3d at 566-67). Although the Seventh

Circuit has not squarely held as such, it has suggested that "prejudice" may include situations in which the government's decision to go to trial was altered by the suppression of the evidence. *Id*. Thus, at present, our circuit's case law does not foreclose Kuri from arguing that the proceedings in his case were prolonged by the defendant officers' actions, in violation of his due process rights. Although the court expresses no opinion on Kuri's ultimate ability to show that the prosecution would not have moved forward with the charges against him were it not for the defendant officers' withholding of evidence, he has sufficiently alleged that the defendant officers' actions were material to the decision to prosecute him. Allegations that officers created false evidence, such as by creating false written reports and inducing witnesses to falsely identify a defendant, state a viable *Brady* claim when the evidence is withheld from a criminal defendant. *See, e.g.*, *Engel v. Buchan*, 710 F.3d 698, 709-10 (7th Cir. 2013).

The court concludes that Kuri has sufficiently alleged that the defendants violated his due process rights by withholding material exculpatory evidence, in violation of *Brady*. Accordingly, the defendants' motion to dismiss is denied with respect to the *Brady* allegations in Count I of Kuri's complaint.

**B.  Fourth Amendment and False Imprisonment Claims (Counts II and V)**

The defendants argue that Kuri's Fourth Amendment Claims are time-barred, as is his state-law false imprisonment claim. Kuri was first arrested on August 5, 2009, and released without charges. He was re-arrested on September 8, 2009, and charged with murder and attempted murder. This action was not filed until March 4, 2013. The applicable statute of limitations for a § 1983 claim in Illinois is two years. *Woods v. Ill. Dep't of Children and Family Servs.*, 710 F.3d 762, 768 (7th Cir. 2013). Kuri's claims accrued when he knew of his injury and had the ability to file a lawsuit about the injury. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir.

2006); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) (explaining that a plaintiff "could have filed suit as soon as an allegedly wrongful arrest occurred . . . , so the statute of limitations would normally commence to run from that date"). The defendants argue that Kuri's false arrest and unlawful detention claims accrued at the time of his arrest. According to the defendants, Kuri's action was not filed until a year and a half after the limitations period expired. Kuri agrees that his false arrest and unlawful detention claims are time-barred, as is his pendant state-law claim of false imprisonment. Counts II and V of the First Amended Complaint are therefore dismissed with prejudice.

## C. Malicious Prosecution (Count VI)

In Count VI of the First Amended Complaint, Kuri alleges that he was maliciously subjected to judicial proceedings unsupported by probable cause, and that the proceedings were terminated in his favor in a manner indicative of his innocence. The elements of a malicious prosecution action under Illinois law are "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 2006) (internal quotation marks and citations omitted). Criminal proceedings terminated in a "manner not indicative of the innocence of the accused" cannot support a malicious prosecution action. *Id.*

The defendants argue that Kuri cannot satisfy the elements of a malicious prosecution claim and that his allegations are insufficient to state a claim. First, they contend, even though Kuri was acquitted, the termination of the criminal proceedings was not in a manner indicative of his innocence. They point to Judge Sheehan's comments in delivering his ruling after Kuri's

13

bench trail, in which the judge stated that he could not find Kuri and Gomez guilty because of the "hijacking of the truth in this case, and the manipulation by gang bangers of what happened factually, . . . by lying under oath and conveniently losing their memories at an appropriate time in court regarding key events." (Defs.' Mot. to Dismiss Ex. A 74-75, ECF No. 43-1.) The defendants argue that Judge Sheehan's comments demonstrate that he believed that Kuri was involved in the crime and that, therefore, the acquittal was not indicative of Kuri's innocence.

Kuri responds that an acquittal is sufficient to show a favorable termination for the purposes of a malicious prosecution claim. The court agrees that this element of the claim is sufficiently pleaded. As the Seventh Circuit has stated, "an acquittal is clearly sufficient to show favorable termination." *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 926 (7th Cir. 2001). The defendants offer no case law indicating otherwise. They point to *Pulungan v. United States*, 722 F.3d 983, 985 (7th Cir. 2013), in which the appellate court explained that failure of proof beyond a reasonable doubt was not necessarily reflective of innocence. *Pulungan*, however, involved a request for a certificate of innocence pursuant to 28 U.S.C. § 2513, which could be used by the plaintiff to seek compensation through the Court of Federal Claims. The case did not discuss the standards applied in the malicious prosecution context. The court concludes that, by pleading his acquittal, Kuri has adequately pleaded that the criminal case terminated in his favor.[2]

The defendants further argue that Kuri's malicious prosecution claim is inadequately pleaded because it attributes all alleged misconduct to the eight defendant officers collectively, but not all of the defendant officers, who played different roles in the investigation, could have committed all of the alleged actions. "Federal Rule of Civil Procedure 8(a)(2) requires only a

---

[2]     The court also notes that Judge Sheehan's somewhat cryptic comments did not state that Kuri actually committed the crime; they appear to have been addressed jointly to Kuri and Gomez, and indicated only that the judge believed that two of them knew who had done it.

short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation and citation omitted). To hold the defendant officers liable for malicious prosecution, Kuri will ultimately have to show that they were personally responsible for his injuries. *See, e.g.*, *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (explaining that, at the summary judgment stage, a plaintiff was required to "tie actions of the named defendants to the injuries he allegedly suffered"). But to direct an allegation against multiple defendants at the pleading stage is not impermissible. *See Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009). A plaintiff may not be able to specify which individual committed which parts of the alleged misconduct before the benefit of discovery. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) (quoting *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 789-90 (7th Cir. 1995) ("We do not think that the children's game of pin the tail on the donkey is a proper model for constitutional tort law.")). The key to satisfying Rule 8 is that Kuri "put the defendants on notice of what exactly they might have done to violate [his] rights." *Brooks*, 578 F.3d at 582. Although it relies on "group pleading," Kuri's complaint is coherent, and the basis of his claims is easily understood. *See Wilson v. City of Chi.*, 2009 WL 3242300, at *2 (N.D. Ill. Oct. 7, 2009) ("The Defendants, and not [plaintiff], are in possession of the knowledge of precisely which of them, if any, interrogated, manipulated, threatened, or coerced [witnesses] into giving false testimony."). The court concludes that the allegations in the complaint suffice to put the defendants on notice of Kuri's malicious prosecution claim. The motion to dismiss is denied as to Count VI.

**D.  Derivative Claims**

The defendants ask the court to dismiss Counts III (§ 1983 conspiracy), IV (§ 1983 failure to intervene), VII (state-law civil conspiracy), VIII (*respondeat superior*), and IX (indemnification) because these counts derive from Kuri's due process, false arrest, false imprisonment, and malicious prosecution claims in Counts I, II, V, and VI.  For the same reason, the defendants ask the court to dismiss Kuri's *Monell* claims against the City.

To the extent that the claims are based on the false arrest and false imprisonment claims in Counts II and V, which Kuri has agreed to dismiss, the derivative claims fail.  To the extent that they are based on the *Brady* claim in Count I and the malicious prosecution claim in Count VI, however, the derivative counts survive.  The court therefore denies the motion to dismiss as to Counts III, IV, VII, VIII, and IX, and as to the *Monell* claims.

## IV. CONCLUSION

The defendants' motion to dismiss the First Amended Complaint is granted in part and denied in part.  Counts II and V of the complaint are dismissed.  The court denies the motion to dismiss as to Counts I, III, IV, VI, VII, VIII, and IX, and as to the *Monell* claims.


ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED:   January 10, 2013

16