STATE OF ILLINOIS )
                   ) SS.
COUNTY OF C O O K )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
   COUNTY DEPARTMENT - CRIMINAL DIVISION

PEOPLE OF THE         )
STATE OF ILLINOIS,    )
        Plaintiff,    )
                      )
   vs.                ) No. 09 CR 19903
                      )
DAVID GOMEZ           )
ANTHONY KURI,         )
        Defendants.   )

                REPORT OF PROCEEDINGS had at

the Bench Trial in the above-entitled cause,

before the HONORABLE KEVIN M. SHEEHAN, Judge of

said court, on March 8, 2012.

        PRESENT:

                HON. ANITA M. ALVAREZ
                State's Attorney of Cook County, by:
                MS. MARY JO MURTAUGH
                Assistant State's Attorney,
                on behalf of the People;

                MR. MICHAEL KREJCI,
                MS. STEPHANIE KEMAN
                on behalf of the Defendant,
                David Gomez;

                ABISHI C. CUNNINGHAM, JR.
                Public Defender of Cook County, by:
                MS. JEAN HERIGODT
                MS. HALEY GRAHAM-711
                Assistant Public Defender,
                on behalf of the Defendant,
                Anthony Kuri.

-1-

**Exhibit 8**    **CITY 0157**

door?

A   He just like ran back in, jumped back in or something.  The van.

Q   You have to speak up.

A   He just like looked, stuck his head out, came back in the the van.

Q   Did Mr. Patel park the van right in front of Zae's house?

A   You could say that, yes.

Q   Which side of the van was parked next to Zae's house, the passenger side or the driver's side?

A   Passenger side.

Q   What happened after Zae popped his head in and came back inside the van?

A   I seen somebody shooting at him.

Q   There was a shooting?

THE COURT:  He said, he seen someone shooting at him.  That was his testimony.

BY MS. MURTAUGH:

Q   Did you see who was shooting at you?

A   Little bit.

Q   Pardon?

A   I seen him, but I don't know him.

—76—

CITY 0232

Q   My question is:  Did you see who was shooting at you?

A   Yeah.

Q   Was there just one shooter?

A   One.

Q   Had you seen the shooter before?

A   No.

Q   Was the shooter on foot?

A   Yeah.

Q   Was anyone with the person that was shooting at you?

A   I don't know.  I don't know.  I don't remember.

Q   How many gunshots did you hear?

A   Like, I don't know, maybe five, couple more, something.

Q   Where was the shooter shooting at?

A   At the van.

Q   Pardon?

A   At the van.

Q   After you heard the shooting, what did you do?

A   I don't know.  Just tried to duck down or something.

—77—

CITY 0233

photo array?

A    Yeah.

Q    And when you picked somebody out, how did you tell the detectives that you were picking it out?  Did you do something to the photograph?

A    Yeah.

Q    What did you do?

A    Put a circle on it.

Q    Did you sign anything?

A    Yeah.

Q    And who is that person you picked out?

A    Rowdy.

Q    Rowdy.  Why did you pick him out?

A    Because my friend told me they were around there.

Q    Was he at the scene of the shooting?

A    Yeah.

Q    Was he at the scene of the shooting, the guy you picked out there, Rowdy?

A    I can't remember.

Q    Can't remember?

A    No.

Q    Do you see Rowdy in court today?

-86-

CITY 0242

A    Probably.

Q    Why don't you point to him and tell us where he is in the courtroom?

A    He is right there.

Q    Can you describe him a little further?

A    I don't know.  Long curly hair.

THE COURT:  Where is he seated in relation to everybody over there?

THE WITNESS:  In the back.

THE COURT:  Pointing to the person in the back with curly hair.  He identified the person he knows as Rowdy, who appears to be Mr. Kuri.

BY MS. MURTAUGH:

Q    Did you tell the police he was on the scene on Central Park?

A    No.

Q    Showing you People's Exhibit 33A for identification.  Do you see that form, that lineup photo spread advisory form?

A    Uh-huh.

Q    Yes?

A    Yes.

Q    Did you sign that?

—87—

CITY 0243

where did you see them at when you stopped in front of Zae's house?

A    Seen them by the sidewalk.

Q    You seen them by the sidewalk?

A    Uh-huh --

Q    And when you say, by the sidewalk, is that in front of Zae's house, coming towards you from Zae's house, or behind you?

A    They was -- they were like a little bit south of his house, like two houses down.

Q    And these persons that you saw that were south of Zae's house, were they walking together, were they on a bike?

A    I didn't see nobody.

Q    I'm sorry?

A    I seen them walking.

THE COURT:    He said no bike.

BY MR. KREJCI:

Q    Were they walking side by side?

A    No.

Q    Was one person ahead of the other person?

A    Yeah.

Q    It's your testimony that at some point

—107—

CITY 0263

him out because friend told me.  That was the testimony.

BY MR. KREJCI:

Q   You testified earlier that you picked this person out because your friend told you?

A   Right.

Q   Which friend told you that?

A   Zae.

Q   Zae told you to pick him out, is that right?

A   Told me who they were because I didn't know who.

Q   You didn't know either one of them?

A   No.

Q   And Zae is the one who told you to pick them out?

A   No.

Q   Zae told you to pick out Rowdy, is that right?

A   Who?

Q   When you talked to Zae, you talked to him on the phone, correct?

A   Right.

Q   And he told you to pick out Rowdy?

—118—

CITY 0274

MS. MURTAUGH: Objection.

THE COURT: He answered that yes or no --

THE WITNESS: He ain't tell me to pick nobody. He told me who they were, the ones, you know what I'm saying? He didn't say go pick this guy out, no.

BY MR. KREJCI:

Q He told you they were the the ones there?

A Right.

Q And that is why you identified them --

A Yes.

Q And that goes along with Mr. Gomez, too, correct --

A Right, right, right, correct.

Q After you identified Rowdy or Rudy, do you remember being shown any photographs of Mr. Gomez that night?

A Yeah.

Q You sure?

A What night?

Q On August 2nd the detectives were there and they had other photographs, did they

—119—

CITY 0275

not?

A   Yeah.

Q   And you didn't look at any other photographs that night, did you?

A   Just those ones -- the ones we brought.

Q   The one of Rowdy.  Did they try to show you some other photographs?

A   Yeah.

Q   And you didn't look at them at that time, did you?

A   I don't remember.

Q   Do you remember telling them you didn't feel good at that time in the night and you wanted to sleep on it for a day?

MS. MURTAUGH:  Objection to the form of the question --

THE WITNESS:  No.

THE COURT:  Overruled.

BY MR. KREJCI:

Q   You didn't tell the officers you were in some pain, that you couldn't look at the next group of photographs?

A   No.

—120—

CITY 0276

Zae and he told you they were the ones that did it, correct?

A   Correct.

Q   Now, that night, on August 2nd, do you remember telling the police that -- Strike that.

On the night of August 2nd, the day before, do you remember telling the police that when you identified Rowdy that one of the offenders you saw, he was the guy that was pedaling the Huffy bike while a second male Hispanic was riding on the rear pegs?  Do you remember telling that to the detectives?

A   No.

Q   Then you said that the male Hispanic on the rear pegs jumped off the bike and produced a handgun and began shooting into the van.  Do you remember telling that to the detectives on August 2nd?

A   No.

Q   Do you remember telling the detectives on that particular time that the shooter produced out of a bag a gun and fired?

A   Yeah --

—122—

CITY 0278

MS. MURTAUGH: Objection.

THE COURT: Basis?

MS. MURTAUGH: It's not impeaching.

THE COURT: Basis is not impeaching?

MS. MURTAUGH: It is.

THE COURT: How do I know that until I hear an answer.

MS. MURTAUGH: It was a premature objection. I apologize.

THE COURT: And if it can be proved up or not. He is asking if shooter produced a gun from a bag. I don't know if that is contained in the reports or not. That is not something I'm privy to.

If you are going to ask a question for a report, I'm assuming that is report.

Ms. Murtaugh, is that why you're objecting to it not being impeaching because it's not in the report? Because I don't have the reports.

MR. KREJCI: Judge, I can prove it up.

THE COURT: Here is the problem. He either told police what you said in your

—123—

CITY 0279

question and it's recorded, or it's not.

MR. KREJCI: Correct.

THE COURT: If it's not --

MR. KREJCI: Impeachment by omission.

THE COURT: No. That is not the way you phrased the question. First of all, you phrased it by telling, do you remember telling, which is not a foundational impeaching question, with the word remember. Now, you either have a good faith basis to ask him that and you are looking at a report that he told the police the shooter produced a gun from a bag, or not. Move on.

MR. KREJCI: Can I rephrase the question?

THE COURT: Sure.

BY MR. KREJCI:

Q   Mr. Fernandez, did you tell the two detectives on August 2nd at the hospital after you identified the photograph of Rowdy that he was one of the offenders you saw pedalling the Huffy bike while a second male Hispanic was riding on the rear pegs?

A   No.

-124-

CITY 0280

Q    You didn't tell him that?

A    Nope.

Q    Did you tell the detectives that night that the male Hispanic on the rear pegs jumped off the bike, produced a handgun, and began shooting into the van?

A    Not that bike, but never -- I never seen --

Q    You never told any of the detectives that anybody was on a bike?

A    No.

Q    During that same conversation with the detectives did you ever tell them that the shooter took a gun out of a bag and fired into the van?

A    Yeah.  Yes.

THE COURT:  Is that your question for impeachment by omission?

MR. KREJCI:  Yes.

THE COURT:  He said earlier about a bag.  That is a proper question for impeachment by omission.  Go ahead.

BY MR. KREJCI:

Q    That night, Mr. Fernandez, the van was

—125—

CITY 0281

A   The back, the rear.

Q   You didn't shield your head from the shattering glass?

A   No.

Q   No.  You didn't turn away from the shattering glass?

A   No.

Q   Were you cut at all on the face?

A   No.

Q   Now, you never saw a bike that night, is that what you're telling us?

A   Correct.

Q   And there was only one person shooting, isn't that correct, sir?

A   Correct.

Q   Now, when the shooting stopped you jumped into the driver's seat, is that fair to say?

A   No.  During.

Q   When did you jump into the driver's seat?

THE COURT:  He said during.  Next question.

BY MS. HERIGODT:

—134—

CITY 0290