IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUAN JOHNSON, )
)
Plaintiff, )
)
)
-vs- ) Case No. 05 C 1042
)
) Chicago, Illinois
REYNALDO GUEVARA, et al., ) June 8, 2009
) 10:00 a.m.
Defendants. )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOHN F. GRADY

APPEARANCES:

For the Plaintiff: LOEVY & LOEVY
BY: MR. JONATHAN I. LOEVY
MR. RUSSELL R. AINSWORTH
MS. ELIZABETH N. MAZUR
MR. DANIEL M. TWETTEN
312 North May Street, Suite 100
Chicago, Illinois 60607
(312) 243-5900
GARDINER, KOCH & WEISBERG
BY: MR. THOMAS G. GARDINER
53 West Jackson Boulevard, Suite 950
Chicago, Illinois 60604
(312) 362-0000

Court Reporter:

CHARLES R. ZANDI, CSR, RPR, FCRR
Official Court Reporter
United States District Court
219 South Dearborn Street, Room 1728
Chicago, Illinois 60604
Telephone: (312) 435-5387
email: Charles_zandi@ilnd.uscourts.gov

APPEARANCES: (Continued)
For the Plaintiff: MR. DANIEL J. STOHR
222 North LaSalle Street, Suite 200
Chicago, Illinois 60601
(312) 726-1180

For the Defendants: JAMES G. SOTOS & ASSOCIATES, LTD.
BY: MR. JAMES G. SOTOS
MS. ELIZABETH A. EKL
MS. SARA M. CLIFFE.
550 East Devon, Suite 150
Itasca, Illinois 60143
(630) 735-3300

(Proceedings heard in open court:)
(Jury selection reported, not transcribed.)
(Jury sworn.)

THE CLERK: You've been sworn. You may be seated.

THE COURT: Just a few words, ladies and gentlemen, before we break for lunch. You'll be permitted to take notes during the testimony, and Jackie, my courtroom deputy, Jackie Deanes, will furnish you notebooks and pencils or pens to do that.

And I would recommend that you take notes. When I try a case without a jury, I find it very helpful to have notes at the end, because sometimes it's difficult to keep all the testimony in mind. And you might want to make notes about your reaction to certain witnesses, do you find the witness credible or not. It's surprising how notes of that kind might -- might help you toward the end when you begin your deliberations.

As the case comes in, you will be forming impressions about what is true and what is not true, and that is perfectly natural. You shouldn't feel any hesitation about that. That's -- that's the way it works.

The important thing is that any impressions you do form are tentative, subject to change, and that's what you'll find to be true. You'll think one thing, and then five minutes later, you'll think something else. There's direct

examination, and there's cross-examination, and then there's redirect examination and recross. And it's -- sometimes you don't change your mind, but sometimes you do.

And the important thing is to keep your mind open until the end of the case. And by the end of the case, I mean after all the witnesses have testified, all the evidence is in, both sides have rested, I've given you my instructions of law, and most important of law, or at least as equally important as everything else is when you exchange your own views and opinions when you begin your deliberations as a jury.

There are ten of you, and the likelihood of the end product being better on that basis than the end product that would be reached by one person is really quite good. That's why we have juries. I mean, it's a system that's been proven over time to be the best method that anybody's ever come up with to investigate facts, and that's what you'll be doing here is investigating facts. But as I say, keep an open mind until it's all over.

I don't have any way of knowing whether something's going to be in the newspaper or on the media or not. I'm constantly surprised at what they do and don't think is newsworthy. But I always want to be prepared for the things that might occur in the media; and, therefore, please do not read anything in the newspaper that looks like it might

J. Johnson - direct

Page 177

the trial judge in the federal habeus case, Judge Zagel, was an error that was not harmless beyond a reasonable doubt. That's a pretty tough test for the government to have had to pass there, and they failed it.

The discussion of the Seventh Circuit indicates that the testimony of a rival gang member had sufficient possibility of bias that it should have been allowed in the state case that was the basis of the habeus petition, and that the exclusion of it didn't meet the -- or failed to meet the test of being harmless beyond a reasonable doubt.

Now, we're dealing here, of course, with a civil case, not involving a constitutional question, but rather, an evidentiary question in a civil case. And this is not to say that the issue is not important, but it is a somewhat less demanding test, I think, than would obtain in a case where the issue is the constitutional right of confrontation under the Sixth Amendment.

But quite aside from that, I acknowledge that the bias here is not irrelevant. Or put it this way: The question of gang membership is probably not irrelevant to the question of possible bias.

Now, the witnesses as to whom the defendant wishes to show gang membership are -- and refresh my recollection. They were witnesses who belonged to the same gang as the plaintiff or a rival gang?

Page 178

MR. LOEVY: No, your Honor. A rival gang, your Honor. That's always been our point. They just say gang, but actually, they've got it backwards.

MR. SOTOS: Well, that's not completely accurate. Some of them are rival gangs. Some of them are the same gangs. Sam Perez is the same gang. Even more than that, Judge, I'll just give you one quick example that I really don't know how to navigate around. I guess we'll to figure something out. But Mr. Johnson said in his deposition that when he arrived at the scene of the Caguas, at some point, he saw this Little Rook across the street, and Little Rook said, "Fuck you, Cobra killer," and that Mr. Johnson was surprised that he would say that. And then some of his friends attacked him. The reason they attacked him was because they felt their gang was disrespected, not unlike what Mr. Johnson was talking about what happened in prison when you can't allow that kind of thing to happen.

So, our view is that that gave them all the motivation in the world to attack him, and I'm not even quite sure how I can cross-examine him without asking him about the statement that actually was the direct catalyst of the attack.

MR. LOEVY: Well, we -- I don't read Mr. Johnson's deposition that way at all, but what's the difference -- why don't you just say he came out of the club and said, "Fuck you guys," and just, you know, insulted them? Everybody admits

Page 179

that there was an altercation, so why do you have to --

THE COURT: Well, maybe what I'm about to say in further explanation will provide the answer to that. You can have a seat again.

And, of course, we're talking about gang membership as of 20 years ago, correct, not current gang membership as the witness takes the stand?

MR. LOEVY: Correct, Judge.

THE COURT: And that is another feature that is possibly distinguishing from some of the cases relied upon by the defendant.

But conceding for purposes of this discussion that evidence of gang membership, even as long ago as 20 years and in a rival gang, might be for the jury to decide to what extent it shows bias, the Court has an obligation to weigh the probative value of relevant evidence in relation to its prejudicial effect.

And I refer, of course, to Rule 403 of the Federal Rules of Evidence. The rule reads as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

That's the relevant language of Rule 403. Now, I've discussed the probative value of showing gang membership of the witnesses in question. Let's look at the prejudicial

Page 180

effect.

Introducing that evidence of bias would, of course, require introducing evidence of the plaintiff's gang membership of 20 years ago, and perhaps as well evidence of whatever leadership role he had in the particular gang that he was a member of. Would that be prejudicial to the plaintiff? To ask the question is to answer it.

We all know that hardly a day goes by that we do not read in the press of some new gang murder, some new gang killing, sometimes inadvertent as a result of some child getting caught in the crossfire, sometimes intentional. But gang violence and the evil of gangs is daily fare in our media in Chicago. These jurors are, of course, exposed to that as well as the rest of us. Common sense tells us that evidence of the plaintiff's gang membership would be prejudicial to him.

So, the question is whether under Rule 403 the danger of unfair prejudice and confusion of the issues is -- substantially outweighs the probative value of the evidence of gang membership on the part of the plaintiff and the witnesses 20 years ago. The answer is clearly yes.

The danger of unfair prejudice overwhelmingly outweighs what minimal probative value this proffered evidence would have, and I believe it would be serious error for the Court to permit the examination proffered by the defendant.

45 (Pages 177 to 180)

J. Johnson - direct

Page 181

And, for that reason, I exclude the proffered evidence and hold that it is inadmissible under Rule 403.

Now, I have indicated that to the extent it is possible to do so and helpful to the defendant, we can make adjustments. And, in fact, Mr. Loevy has suggested a couple, and you can work together and see what else you can work out. But, for instance, proving that Officer Guevara was familiar with the young people in the neighborhood and had been for most of their lives and, for that reason, was called to assist in the investigation, that explains why he didn't conduct an exhaustive investigation and why his activity was as limited as it was and, I think, accomplishes what the defendant is entitled to have the jury know without at the same time bringing in to the jury's attention this prejudicial evidence concerning gang membership.

So, that's my ruling on the gang issue. Is there anything else you want to discuss before tomorrow?

MR. LOEVY: Well, on that last point, you know, Mr. Sotos in his opening did start talking about -- first he was talking about specialist, and then he was talking about intelligence; and I thought that that was too -- too much telegraphing to the jury where we were going.

THE COURT: Well, let's not use any words that could fuel the fire here.

MR. SOTOS: I didn't really think that it had, but I

Page 182

don't have to use that word again. I wasn't -- I didn't do it intentionally.

THE COURT: Well, I don't think that was your intention, but I had the same reaction that Mr. Loevy did to the use of that word. Let's not talk about intelligence again.

Okay. I'll see you at 9:30.

MR. LOEVY: Thank you, your Honor.

MR. SOTOS: Thanks, your Honor.

(Court adjourned, to reconvene 6/9/09 at 9:30 a.m.)

CERTIFICATE

I, Charles R. Zandi, do hereby certify that the foregoing is a correct, true, and accurate transcript of the trial proceedings, Volume 1, Pages 1 through 182, had in the above-entitled case before the Honorable JOHN F. GRADY, one of the Judges of said Court, at Chicago, Illinois, on June 8, 2009.

/s/Charles R. Zandi          August 3rd, 2009
Charles R. Zandi          Date
Official Court Reporter

Page 183

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUAN JOHNSON,                    )
                                 )
          Plaintiff,    )
                                 )
                                 )
-vs-                    ) Case No. 05 C 1042
                                 )
                        ) Chicago, Illinois
REYNALDO GUEVARA, et al.,        ) June 9, 2009
                        ) 9:45 a.m.
          Defendants.   )

VOLUME 2A
TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOHN F. GRADY
APPEARANCES:
For the Plaintiff:   LOEVY & LOEVY
              BY: MR. JONATHAN I. LOEVY
                  MR. RUSSELL R. AINSWORTH
                  MS. ELIZABETH N. MAZUR
                  MR. DANIEL M. TWETTEN
              312 North May Street, Suite 100
              Chicago, Illinois  60607
              (312) 243-5900

              GARDINER, KOCH & WEISBERG
              BY: MR. THOMAS G. GARDINER
              53 West Jackson Boulevard, Suite 950
              Chicago, Illinois  60604
              (312) 362-0000

Court Reporter:

        CHARLES R. ZANDI, CSR, RPR, FCRR
           Official Court Reporter
          United States District Court
        219 South Dearborn Street, Room 1728
             Chicago, Illinois  60604
          Telephone:  (312) 435-5387
        email:  Charles_zandi@ilnd.uscourts.gov

Page 184

APPEARANCES:  (Continued)
For the Plaintiff:    MR. DANIEL J. STOHR
                 222 North LaSalle Street, Suite 200
                 Chicago, Illinois  60601
                 (312) 726-1180

For the Defendants:    JAMES G. SOTOS & ASSOCIATES, LTD.
                 BY:  MR. JAMES G. SOTOS
                   MS. ELIZABETH A. EKL
                   MS. SARA M. CLIFFE
                 550 East Devon, Suite 150
                 Itasca, Illinois  60143
                 (630) 735-3300