# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY KURI, <br> (a.k.a. Ramsey Qurash) <br> <br> Plaintiff, <br> <br> vs. <br> <br> DET. McDERMOTT (Star No. 21084), <br> DET. FOLINO (Star No. 20143) <br> <br> Defendants. | Case No. 13 C 1653 <br> <br> Judge Edmond E. Chang |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants, Timothy McDermott and John Folino, Jr. ("Defendants"), by and through their undersigned attorneys, pursuant to the Federal Rules of Civil Procedure 50(a), hereby move for judgment as a matter of law in their favor, and against the Plaintiff. In support thereof, Defendants state as follows:

## INTRODUCTION

Plaintiff's claims against Defendants include Section 1983 violation of due process (Count I), conspiracy to deprive constitutional rights (Count III), failure to intervene (Count IV), and state law claim of malicious prosecution (Count VI).[1] No reasonable jury could conclude in favor of Plaintiff on each of these claims, and, thus, Defendants are entitled to a directed verdict in their favor pursuant to Rule 50(a).

---

[1] Plaintiff's state law false imprisonment claim (Count V) and Section 1983 false arrest claim (Count II) were previously dismissed for failure to state a claim. (Dkt. 57). Plaintiff withdrew his state law conspiracy claim at the jury instruction conference.

## LEGAL STANDARD

Federal Rule of Civil Procedure 50(a) states that the Court may grant judgment as a matter of law against a party when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" Fed.R.Civ.P. 50(a). In deciding a Rule 50(a) motion, "the question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff." *Hall v. Forest River, Inc.,* 536 F.3d 615, 619 (7th Cir. 2008) (citing *Hossack v. Floor Covering Ass'n. of Joliet, Inc.,* 492 F.3d 853, 859 (7th Cir. 2007)). To avoid a directed verdict, "plaintiff must offer substantial affirmative evidence to support [his] argument." *Florek v. Vill. of Mundelein, Ill.,* 649 F.3d 594, 601 (7th Cir. 2011) (quoting *Heft v. Moore,* 351 F.3d 278, 284 (7th Cir. 2003)).

## ARGUMENT

**I.  NO REASONABLE JURY COULD RULE IN PLAINTIFF'S FAVOR ON HIS DUE PROCESS CLAIM.**

    **A.  Plaintiff Failed to Prove Defendants Fabricated Any Evidence.**

To prove Defendants violated Plaintiff's right to due process by fabricating evidence, Plaintiff must prove that Defendants manufactured evidence that deprived Plaintiff of his liberty. *Avery v. City of Milwaukee,* 847 F.3d 433, 439 (7th Cir. 2017). Fabricated evidence is evidence that the Defendants created knowing it to be false. *Id.* (*quoting Petty v. City of Chicago,* 754 F.3d 416, 423 (7th Cir. 2014)). In fabrication cases, there is a distinction between fabricated evidence and coerced evidence. The Seventh Circuit explained that fabricated evidence is evidence "known to be untrue by the witness and by whoever cajoled or coerced the witness to give it;" it is "made up" and "invariably false." *Petty v. City of Chicago*, (7th Cir. 2014). By contrast, "getting a reluctant witness to say what may be true" is not fabricated. What is

2

necessary is some factual basis to show that Defendants *knew* the evidence they collected was false. *Id.*; *Hyung Seok Koh v. Graf*, 307 F. Supp. 3d 827, 858 (N.D. Ill. 2018); *Wrice v. Burge*, 187 F. Supp. 3d 939, 953 (N.D. Ill. 2015) (dismissing fabrication claim where there were no facts to suggest defendants knew the alleged fabricated evidence was false).

Here, Plaintiff claims Defendants fabricated Russell and Fernandez's identifications of him, but Plaintiff presented no evidence that Defendants knew those identifications were false. The only evidence Plaintiff presented was Russell's testimony that the police told him who to pick and Fernandez's testimony that the police told him who the offenders were.[2] Neither witness stated that they ever gave Defendants any indication that Plaintiff or Gomez were *not* the offenders. To the contrary, both Russell and Fernandez admitted they *did* make the identifications. Further, neither witness provided any context for their statements at all. For instance, Russell did not explain what conversation occurred with him and the police, such that the jury could conclude Defendants told him who the offenders were *before* he made the identifications. Similarly, while Fernandez testified that he could not make an identification, he never testified that he told Defendants that Plaintiff and Gomez were *not* involved in the crime. Thus, there is no evidence from which the jury could infer that Defendants knew Plaintiff and Gomez were not the true offenders. What's more, Plaintiff has presented *zero* evidence that Gomez did not commit the shooting. In fact, a reasonable inference from Russell's testimony is that Gomez was the shooter. If both Russell and Fernandez identified Plaintiff and Gomez, and Gomez was the shooter, then there is no conceivable way the jury could find that Defendants

---

[2] As this Court is aware, both Russell and Fernandez contradicted themselves multiple times in their sworn testimony. In Defendants' view, their credibility has been attacked to such an extent that no reasonable jury could believe any of their testimony as a sufficient evidentiary basis to establish Plaintiff claims. Nevertheless, the following arguments presume the jury has some basis to credit the very narrow testimony Plaintiff presented that the Defendants told them who to pick or who the offenders were.

knew Russell and Fernandez's identifications of Plaintiff were false, when they had reason to believe the identifications of Gomez were true.

Nor is it enough to say that because the police reports Defendants prepared are inaccurate or misleading to infer Defendants fabricated evidence. The due process clause does not guarantee perfect police reports or a perfect accounting of an investigation. *Hyung Seok Koh*, 307 F. Supp. 3d at 858. Further, even viewing the evidence in a light most favorable to Plaintiff, what Defendants recorded in their police reports about Russell and Fernandez's identifications is technically accurate. While both witnesses claim the police told them who to pick, they both admit they did make the identifications. Thus, none of the police reports are so deliberately misleading to amount to fabricated evidence. *Id.*

Finally, Plaintiff expended much effort at trial trying to establish that Defendant Folino learned the names Rowdy and Lil David from Abdul Wachaa before speaking to Russell. Yet, Plaintiff never established that Folino learned the names from Wachaa, nor that what Wachaa told Folino was false. This argument, therefore, is much too tenuous and, more importantly, does not undercut Defendants' belief in the truthfulness of Russell and Fernandez's identifications.

### B. Plaintiff Failed to Prove Defendants Withheld Any Material Exculpatory Evidence.

To prove a due process violation pursuant to *Brady v. Maryland*, Plaintiff must establish Defendants withheld exculpatory evidence that would have affected the outcome of his case. *Carvajal v. Dominguez*, 542 F.3d 561, 570 (7th Cir. 2008). In particular, "[t]o prevail on a *Brady* claim for an officer's failure to disclose evidence, a plaintiff must show that (1) the evidence was favorable to him; (2) the officer concealed the evidence; and (3) the outcome would have been different had the evidence been disclosed. *Gill v. City of Milwaukee,* 850 F3d

335, 343 (7th Cir. 2017). Plaintiff's theory at trial is that Defendants failed to disclose that they knowingly manipulated Russell and Fernandez's identifications. Plaintiff failed to prove his theory at trial.

*Brady* does not require disclosure of exculpatory evidence pretrial. *Id.* (citing cases). The critical question is whether the exculpatory evidence is disclosed "in time for the defendant to make use of it." *Id.* If the criminal defendant can make use of the evidence at trial, a subsequent *Brady* claim fails. *Id.* In this case, not only did Plaintiff make use of the alleged exculpatory evidence at his criminal trial, he did so successfully because he was acquitted. On summary judgment, Plaintiff argued that he could still satisfy the prejudice prong of his *Brady* claim by establishing that no reasonable prosecutor would have continued with the prosecution had he or she known that Defendants influenced the identifications. There is no support for that theory in the law. The Seventh Circuit has made clear that despite pretrial detention, if a criminal defendant can make use of the exculpatory evidence at trial, a *Brady* claim cannot stand. *Id.*

Nevertheless, even if Plaintiff is right – that a *Brady* claim can survive if he can prove that the charges against him would have been dismissed pretrial had Defendants informed the prosecutors of Plaintiff's version of Russell and Fernandez's identifications – Plaintiff nevertheless failed to establish that evidence at trial. Plaintiff offered no evidence from his criminal defense attorney or the trial prosecutor to suggest that the charges would have been dropped at any time prior to his acquittal had the alleged exculpatory evidence been disclosed. Nor is there any evidence for the jury to infer that would have been the case. In fact, the evidence suggests the opposite. As stated, Plaintiff presented no evidence Defendants *knew* the identifications of Russell and Fernandez were false. Russell admitted at trial that he did tell the

5

police Rowdy and Gomez were the offenders, and Plaintiff presented no evidence that Russell would have backed off his identifications any earlier than at the criminal trial. Instead, the evidence shows that Russell did not back off even when he had the opportunity because he told Plaintiff's investigator that Plaintiff and Gomez were the offenders. In addition, Plaintiff presented no evidence that Gomez was not the shooter. That means that, at most, all that Plaintiff's evidence shows is that Russell and Fernandez's identifications of him may have been suggested or influenced by Defendants, but not that he did not actually commit the crime. In that case, the prosecutor may have simply decided that Defendants' conduct goes to weight of the evidence, not the admissibility, and proceeded with the prosecution. Because Plaintiff presented no evidence to suggest otherwise, his *Brady* claim fails.

Plaintiff also did not present evidence that he could not discover evidence of Defendants' alleged suggestive identifications through the exercise of reasonable diligence. There is no dispute that the evidence of the alleged suggestive identification was not exclusively in Defendants' control. Russell and/or Fernandez could have divulged it. While Plaintiff's investigator interviewed Russell before trial, and Russell did not tell the investigator that the police told him who to pick out, there is no evidence that Defendants took any affirmative steps to prohibit him from providing that information. For instance, there is no evidence that Defendants pressured or threatened Russell to keep the information to himself.[3] *C.f. Newsome v. McCabe*, 319 F.3d 301, 303 (7th Cir. 2003) (witness threatened into silence with fear of imprisonment by officer defendants who thereby obstructed the ability of the prosecutors and defense counsel to get at the truth in the criminal trial). To the contrary, based on Russell's

---

[3] Plaintiff tried to insinuate that Russell felt pressure to go along with the "state's theory of the case" because he had recently been arrested on August 3, 2009, but Russell disavowed that theory. Further, he testified that he did not have any memory of being arrested on August 3, 2009.

6

testimony at trial, the jury could easily infer that Russell did not tell the investigator the police told him who to pick out because it never happened or because he intended to convey to Defendants that Plaintiff and Gomez were the actual perpetrators.

As for Fernandez, he too did not offer any evidence that he was pressured to keep the circumstances of his identification a secret. Quite the opposite, his testimony demonstrates that he made the identifications without any cajoling from Defendants at all. Yet, Plaintiff did not offer any evidence that he even tried to interview Fernandez pretrial to learn about the circumstances of his identification. Without any evidence that Plaintiff was prohibited from learning the circumstances of Fernandez's identifications by Defendants, then Plaintiff has not established his claim.

Indeed, the Seventh Circuit has made clear that police do not have to create exculpatory evidence or accurately disclose the circumstances of their investigations to the prosecution. *Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015); nor are they required to investigate on the criminal defendant's behalf. *Harris v. Kuba*, 486 F.3d 101, 1017 (7th Cir. 2007). Accordingly, Plaintiff failed to establish that Defendants concealed any exculpatory evidence. *See id.* at 1015 (no suppression under *Brady* where evidence is available to criminal defendant); *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002) (holding evidence not suppressed when it is disclosed to criminal defendant with sufficient time to make use of it).

## II. NO REASONABLE JURY COULD CONCLUDE THAT DEFENDANTS LACKED PROBABLE CAUSE.

The existence of probable cause defeats Plaintiff's Fourth Amendment pretrial detention claim and his state law malicious prosecution claim.[4] *See Manuel v. City of Joliet,* 137 S. Ct.

---

[4] As reflected in the jury instructions, this Court has applied the standard for probable cause for both the illegal detention claim and the malicious prosecution claim.

911 (2017); *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 926 (7th Cir. 2001) (the existence of probable cause is an absolute bar to a malicious prosecution claim). Probable cause is a set of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 642 (1st Dist. 2002). The Seventh Circuit recognizes that if a reasonably credible witness or victim informs the police that someone has committed a crime, the officers have probable cause to make an arrest. *Matthews v. City of East St. Louis*, 675 F.3d 703, 707-08 (7th Cir. 2016); *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir.2007). This is so even when the suspect denies wrongdoing. *See, e.g., Reynolds v. Jamison*, 488 F.3d 756, 762 (7th Cir.2007). In fact, "where the victim of the crime supplies the police with the information forming probable cause, there is a presumption that this information is inherently reliable." *Sang Ken Kim v. City of Chicago*, 368 Ill. App. 3d 648, 655, 858 N.E.2d 569, 575 (1st Dist. 2006), *see also Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009).

On summary judgment, Plaintiff argued that his pretrial detention and malicious prosecution claims survive because he could prove that Defendants manufactured their probable cause. Yet, he did not establish that theory at trial. At stated above, there is no evidence that Defendants had any reason to believe that Russell's identification of Plaintiff, even if Defendants suggested it or influenced it, was not factually accurate. Russell testified he told the police that Plaintiff was one of the offenders, and Plaintiff never established that Russell only did so because of Defendants' influence. Again, the evidence suggests otherwise because Plaintiff presented no evidence that Gomez was not the actual shooter. Russell's identification of Plaintiff alone, therefore, establishes probable cause. While the evidence for Fernandez is slightly different because he testified that he told the police he could not identify the offenders,

8

he also testified that he *did* make the identifications when presented with their photos, despite not knowing Gomez, and testified that he believed Gomez and Plaintiff were the offenders because of what Russell told him. As such, there is no basis for the jury to conclude that either Russell or Fernandez's identifications were false.

Defendants also had additional evidence to establish probable cause. For instance, the investigation revealed that members of the Spanish Cobras were responsible for the crime and Plaintiff admitted that he was a Spanish Cobra. Russell agreed to have his interview with ASA Gudino video recorded. Both Russell and Fernandez testified under oath at the grand jury. Plaintiff lied to Defendants about whether he knew Gomez. Plaintiff fled to Rochelle after he was initially released on August 5, 2009. And, the alibis Plaintiff provided were not substantiated.

Added to that, the evidence Plaintiff presented does not undercut a finding of probable cause. The fact that Plaintiff denied wrongdoing is not dispositive. *Reynolds*, 488 F.3d at 762. Further, Defendants did not have the results of any forensic testing before the charging stage of the process. And, finally, there was no evidence that Defendants should have believed Russell's "first story" that Russell could not make any identification because Plaintiff offered no evidence that his eventual identification of Gomez was inaccurate and presented no evidence that Defendants should have disbelieved Russell when he told them Plaintiff was the second offender.

Because of the existence of probable cause, Plaintiff's pretrial detention claim and state law malicious prosecution claim fail as a matter of law.

In addition, Plaintiff failed to present sufficient evidence to establish the malice prong of his state law malicious prosecution claim. The Court will instruct the jury that a defendant acts with malice in commencing or continuing a criminal prosecution if he acts for any reason other

9

than to bring a person to justice. Further, malice may only be inferred if a lack of probable cause has been clearly proved and the circumstances are inconsistent with good faith by the defendant. As explained in the sections above, Defendants had no reason to believe Russell and Fernandez's identifications were inaccurate. Plaintiff presented no evidence that Defendant lacked any reason to believe Plaintiff and Gomez were the true offenders, and Plaintiff offered *zero* evidence that Defendants had any motive or malintent to proceed with the case against Plaintiff. As such, Plaintiff's malicious prosecution claim fails on the malice prong as well.

### III. NO REASONABLE JURY COULD FIND DEFENDANTS LIABLE ON PLAINTIFF'S DERIVATIVE CLAIMS.

Plaintiff's remaining claims are Section 1983 conspiracy and failure to intervene claims. These claims are derivative of his Section 1983 due process claim. For the reasons stated above, because no reasonable jury could find Defendants liable on Plaintiff's due process claim, the court should direct a verdict in Defendants' favor on the derivative claims. *See Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999) (holding the absence of any underlying violation of the Plaintiffs' constitutional rights precludes the possibility of succeeding on a conspiracy claim); *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (concluding that in order for there to be a failure to intervene, there must be an underlying constitutional violation).

In addition, Plaintiff's evidence was insufficient to establish his conspiracy claim because he did not present any evidence on any agreement between to Defendant Folino and McDermott. There is no evidence that either one of them had any prior intention of violating Plaintiff's rights, much less that they talked about it or decided on it beforehand. For this reason, Plaintiff's conspiracy claim fails.

**IV.     DEFENDANT MCDERMOTT'S PERSONAL INVOLVEMENT**

To succeed on any claims against Defendant McDermott, Plaintiff must have established his personal involvement in the alleged constitutional violations. Personal involvement is a prerequisite to liability under Section 1983, and Section 1983 defendants cannot be vicariously liable for the conduct of others. *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997); *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) (Section 1983 requires proof that the individual caused or participated in the constitutional violation). While Defendant Folino testified that Defendant McDermott participated with him in the investigation of the Patel homicide, Plaintiff did not elicit any of the alleged circumstantial evidence against Defendant McDermott as he did with Defendant Folino. For instance, Plaintiff did not tie any of the purported Abdul Wachaa conspiracy to Defendant McDermott. If the Court finds there was sufficient evidence for the jury to conclude that Defendant Folino obtained the names Rowdy and Lil David from Wachha before speaking with Russell, there is no evidence that Defendant McDermott was aware of that fact. Nor did Plaitniff offer any of the same circumstantial evidence regarding incomplete or misleading reports against Defendant McDermott, like he did with Defendant Folino, as all of the evidence introduced related to Folino's reports . As such, Plaintiff failed to offer sufficient evidence for the jury to conclude that Defendant McDermott was personally involved in any of the alleged constitutional violations.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendants McDermott and Folino respectfully request this Honorable Court grant its motion for judgment as a matter of law on all Plaintiff's claims and for any other relief it deems just and equitable.

Dated: October 1, 2018

Respectfully submitted,
TIMOTHY McDERMOTT & JOHN FOLINO, JR.

By:    /s/   *Eileen E. Rosen*
       One of their attorneys

Eileen E. Rosen
Stacy A. Benjamin
Catherine M. Barber
Andrew J. Grill
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
312.494.1000
312.494.1001- fax
erosen@rfclaw.com