**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY KURI, | ) | |
| (a.k.a. Ramsey Qurash) | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13 C 1653 |
| | ) | |
| | ) | Judge Edmond E. Chang |
| DET. McDERMOTT (Star No. 21084), | ) | |
| DET. FOLINO (Star No. 20143) | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………...1

ARGUMENT……………………………………………………………………………...2

I.     NO CREDIBLE TESTIMONY SUPPORTS PLAINTIFF'S CLAIMS…………...2

II.    NO REASONABLE JURY COULD FIND IN PLAINTIFF'S FAVOR
ON HIS DUE PROCESS CLAIM…………………………………………………5

    A.  Plaintiff Failed to Prove Defendants Fabricated Any Evidence………………..5

    B.  Plaintiff Failed to Prove Defendants Withheld Any Material
Exculpatory Evidence…………………………………………………………7

III.   NO REASONABLE JURY COULD CONCLUDE THAT
DEFENDANTS LACKED PROBABLE CAUSE………………………………12

IV.   NO REASONABLE JURY COULD FIND DEFENDANTS
LIABLE ON PLAINTIFF'S DERIVATIVE CLAIMS…………………………..15

V.    DEFENDANT MCDERMOTT'S PERSONAL INVOLVEMENT……………..16

CONCLUSION………………………………………………………………………..16

CASES

*Avery v. City of Milwaukee,* 847 F.3d 433, 439 (7th Cir. 2017)………………………………………5

*Burger v. Int'l Union of Elevator Constructors Local No. 2*, 498 F.3d 750, 753 (7th Cir.2007)……2

*C.f. Newsome v. McCabe*, 319 F.3d 301, 303 (7th Cir. 2003)………………………………………10

*Carvajal v. Dominguez*, 542 F.3d 561, 570 (7th Cir. 2008)………………………………………..8

*Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 642 (1st Dist. 2002)………………………...12

*Florek v. Vill. of Mundelein, Ill.,* 649 F.3d 594, 601 (7th Cir. 2011)…………………………………1

*Gill v. City of Milwaukee,* 850 F.3d 335, 343 (7th Cir. 2017)…………………………………….8, 9

*Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997)………………………………………16

*Hall v. Forest River, Inc.,* 536 F.3d 615, 619 (7th Cir. 2008)………………………………………1

*Hammond Group, Ltd. v. Spalding & Evenflo Cos.,* 69 F.3d 845, 848 (7th Cir. 1995)……………..1

*Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)…………………………………………...15

*Harris v. Kuba*, 486 F.3d 101, 1017 (7th Cir. 2007)………………………………………………11

*Heft v. Moore,* 351 F.3d 278, 284 (7th Cir. 2003)…………………………………………………1

*Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir.2007)……………………………13

*Hossack v. Floor Covering Ass'n. of Joliet, Inc.,* 492 F.3d 853, 859 (7th Cir. 2007)………………1

*Hyung Seok Koh v. Graf*, 307 F. Supp. 3d 827, 858 (N.D. Ill. 2018)…………………………...5, 7

*Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999)……...15

*Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009)……………………………………………13

*Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012)…………………………………………16

*Logan v. Caterpillar, Inc.,* 246 F.3d 912, 926 (7th Cir. 2001)……………………………………12

*Manuel v. City of Joliet,* 137 S. Ct. 911 (2017)…………………………………………………...12

*Matthews v. City of East St. Louis*, 675 F.3d 703, 707-08 (7th Cir. 2016)………………………...13

*Petty v. City of Chicago,* 754 F.3d 416, 423 (7th Cir. 2014)…………………………………………5

*Reynolds v. Jamison*, 488 F.3d 756, 762 (7th Cir.2007)……………………………………...13, 14

*Sang Ken Kim v. City of Chicago*, 368 Ill. App. 3d 648, 655, 858 N.E.2d 569,

     575 (1st Dist. 2006)………………………………………………………………………13

*Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015)……………………………………...11

*U.S. ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n.1 (2d Cir. 1974)…………………………………8

*United States v. Almendares,* 397 F.3d 653, 664 (8th Cir. 2005)………………………………...8

*United States v. Blake*, 2:16-CR-74 JVB, 2017 WL 6527296, at *3 (N.D. Ind. Dec. 21, 2017)……8

*United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988)…………………………………8

*United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002)…………………………………...11

*United States v. Ramirez*, 810 F.2d 1338, 1343 (5th Cir. 1987)…………………………………8

*United States v. Rogers*, 960 F.2d 1501, 1510 (10th Cir. 1992)…………………………………8

*United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986)…………………………………………8

*Whitehead v. Bond*, 680 F.3d 919, 925 (7th Cir. 2012)…………………………………………2

*Wrice v. Burge,* 187 F. Supp. 3d 939, 953 (N.D. Ill. 2015)…………………………………………5

Defendants, Timothy McDermott and John Folino, Jr. ("Defendants"),[1] by and through their undersigned attorneys, pursuant to the Federal Rules of Civil Procedure 50(b), hereby move for judgment as a matter of law in their favor, and against the Plaintiff. In support thereof, Defendants state as follows:

## INTRODUCTION

Plaintiff's claims against Defendants include Section 1983 violation of due process, unlawful pretrial detention, conspiracy to deprive constitutional rights, failure to intervene and state law claim of malicious prosecution. At the close of Plaintiff's case and before the case was submitted to the jury, Defendants moved for a directed verdict pursuant to Rule 50(a). (ECF 308). The Court deferred ruling on the motion. Judgment was entered on October 3, 2018. Defendants now renew their judgment as a matter of law pursuant to Rule 50(b).

Rule 50(b) permits the Court to enter judgment as a matter of law if a party has been fully heard on an issue during a jury trial and there is no legally sufficient evidentiary basis for a reasonably jury to find for that party on an issue. *Hammond Group, Ltd. v. Spalding & Evenflo Cos.,* 69 F.3d 845, 848 (7th Cir. 1995). In deciding a motion for judgment as a matter of law, "the question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff." *Hall v. Forest River, Inc.,* 536 F.3d 615, 619 (7th Cir. 2008) (citing *Hossack v. Floor Covering Ass'n of Joliet, Inc.,* 492 F.3d 853, 859 (7th Cir. 2007)). To avoid a directed verdict, "plaintiff must offer substantial affirmative evidence to support [his] argument." *Florek v. Vill. of Mundelein, Ill.,* 649 F.3d 594, 601 (7th Cir. 2011) (quoting *Heft v. Moore,* 351 F.3d 278, 284 (7th Cir. 2003)). Because no legally sufficient evidence supports the

---

[1] The claims against the City of Chicago were not tried because the City of Chicago's motion to bifurcate was granted on November 24, 2014 (*see* ECF No. 86).

jury's verdict on any of Plaintiff's theories of liability, this motion should be granted.

## ARGUMENT

## I.     NO CREDIBLE TESTIMONY SUPPORTS PLAINTIFF'S CLAIMS

To start, it is undeniable that no reasonable jury could find in favor of Plaintiff on any of his claims without necessarily finding support in the testimony of Zay Russell and Tony Fernandez, the two witnesses who identified Plaintiff as one of the offenders in the murder of Guarv Patel.  The circumstances surrounding Russell and Fernandez's identification of Plaintiff is the foundation for Plaintiff's fabricated evidence claim, *Brady* claim, unlawful detention claim, and malicious prosecution claim.  Because Defendants made no admissions to any of the misconduct alleged by Plaintiff, and Plaintiff could not testify to any circumstances of Russell or Fernandez's identifications himself, Russell and Fernandez were the only witnesses for whom the jury could rely on in finding in favor of Plaintiff on any of his claims.  Nevertheless, both Russell and Fernandez testified inconsistently with their own testimony multiple times, under oath, and on material issues, including *at trial*, such that the jury could not reasonably find any of their testimony sufficiently credible to establish liability on any of the elements of Plaintiff's claims.  While the Court ordinarily does not make credibility determinations when deciding a Rule 50 motion, the Court may disregard testimony if "reasonable persons could not believe" it because it "contradicts indisputable physical facts or laws."  *Whitehead v. Bond*, 680 F.3d 919, 925 (7th Cir. 2012); *Burger v. Int'l Union of Elevator Constructors Local No. 2*, 498 F.3d 750, 753 (7th Cir.2007) (the objective evidence must show that it would be unreasonable to believe a critical witness for one side).  Here, both witnesses testified to facts that are necessarily inconsistent with their earlier testimony and objectively unbelievable.

As for Russell, he told the jury that he provided the police the names Rowdy and Lil David as the offenders, and that after he provided the names, he identified their photos. (Trial Transcript, 846: 21-22; 862:17-867:25, attached hereto as Ex. A). Russell did not identify either of the Defendants, and, despite Plaintiff's argument to the contrary, testified that the police never told him that if he made the identifications, Fernandez would get money from the victim compensation fund. (Ex. A, 842:10-13). Russell then testified that the police did not tell him who to pick out. (Ex. A, 838:19-841:4). In another breath, however, Russell told the jury that the police *did* tell him who to pick. (Ex. A, 854:10-15; 879:11-17). Russell did not offer any explanation for that conflicting testimony. Quite obviously, both statements cannot be true. They directly contradict each other. Either the police told him who to pick or they did not. Yet, besides impeaching Russell with snippets of his criminal trial testimony (testimony which the jury did not observe and which Russell would not acknowledge was true), Russell's agreement with Plaintiff's counsel to *one* question that the police told him who to pick is the only piece of evidence that Plaintiff presented from Russell to substantiate his claim that Defendants somehow manipulated or influenced Russell's identifications. Plus, the jury heard testimony from independent witnesses that Russell identified Plaintiff to Assistant State's Attorney Ruth Gudino during the ERI video and gave sworn testimony identifying Plaintiff before the grand jury. Under those circumstances, there is no objectively reasonable way the jury could have credited Russell's testimony to *one* question from Plaintiff that the police told him to pick out, when he offered the exact opposite testimony on the same point. Because it goes against the laws of logic and common sense that both Russell's statements about the police telling him (or not telling him) who to pick could be true, they zero each other out, and, therefore, it was unreasonable for the jury to credit Russell's answer to Plaintiff's *one* question

on the topic. Without Russell's testimony on that point, Plaintiff did not establish that Defendants manipulated or influenced Russell's identifications.

Fernandez's testimony was similarly unreliable. The evidence established that Fernandez gave incriminating testimony against Plaintiff at both the grand jury proceeding and during the criminal trial. Fernandez testified that his grand jury testimony and trial testimony implicating Plaintiff were "inaccurate," but the only explanation he provided was that the court reporter must have taken down his testimony incorrectly, saying the transcript was "made up". (*See* Dkt. 315, excerpts from Fernandez Dep. transcript serving as transcript of trial testimony pursuant to Dkt. 307, at 255:18-257:16). Yet, the parties stipulated that the transcript of those proceedings were accurate. (Ex. A, 1611:20-1612:8). Accordingly, the jury had no basis to credit Fernandez's testimony that the transcript was incorrect, and, therefore, Plaintiff failed to present any reason for the jury to disregard Fernandez's previous sworn testimony. On top of this, Fernandez never testified that he told the police Plaintiff and Gomez were *not* the offenders. In fact, Fernandez thought they were because Russell told him so. (Dkt. 315 at 99:23-101:14). Therefore, there was no objectively reasonable basis for the jury to rely on the slim testimony from Fernandez – that was in direct contradiction to his previous sworn testimony – so as to believe Fernandez's identifications were manipulated or influenced by Defendants.

If both Russell and Fernandez failed to provide any credible testimony, then Plaintiff's claims fail. Without their testimony, Plaintiff presented nothing to contradict Defendants' denials of Plaintiff's allegations, but, more importantly, no evidence to show that Defendants were unjustified in relying on the identifications made by Russell and Fernandez. Accordingly, no reasonable jury could find for Plaintiff on any of his claims and judgment should be entered in Defendants' favor.

## II. NO REASONABLE JURY COULD FIND IN PLAINTIFF'S FAVOR ON HIS DUE PROCESS CLAIM.

### A. Plaintiff Failed to Prove Defendants Fabricated Any Evidence.

To prove Defendants violated Plaintiff's right to due process by fabricating evidence, Plaintiff must prove that Defendants manufactured evidence that deprived Plaintiff of his liberty. *Avery v. City of Milwaukee,* 847 F.3d 433, 439 (7th Cir. 2017). Fabricated evidence is evidence that the Defendants created *knowing* it to be false. *Id.* (*quoting Petty v. City of Chicago,* 754 F.3d 416, 423 (7th Cir. 2014)). Therefore, there is a distinction between fabricated evidence and coerced evidence. The Seventh Circuit explained that fabricated evidence is evidence "known to be untrue by the witness and by whoever cajoled or coerced the witness to give it." *Petty v. City of Chicago*, (7th Cir. 2014). Put differently, fabricated evidence is "made up" and "invariably false." *Id.* By contrast, "getting a reluctant witness to say what may be true" is not fabrication. *Id.* To the contrary, to support a claim that defendants fabricated evidence, what is necessary is some factual basis to show that defendants knew the evidence they collected was false. *See id.*; *Hyung Seok Koh v. Graf*, 307 F. Supp. 3d 827, 858 (N.D. Ill. 2018); *Wrice v. Burge,* 187 F. Supp. 3d 939, 953 (N.D. Ill. 2015) (dismissing fabrication claim where there were no facts to suggest defendants knew the alleged fabricated evidence was false).

Here, Plaintiff claims Defendants fabricated Russell and Fernandez's identifications of him, but Plaintiff presented no evidence that Defendants knew those identifications were false. The only evidence Plaintiff presented was the one-word answer to Plaintiff's counsel's question where Russell agreed the police told him who to pick and Fernandez's testimony that the police told him who the offenders were. Neither witness stated that they ever gave Defendants any indication that Plaintiff or Gomez were *not* the offenders. To the contrary, both Russell and Fernandez admitted they *did* make the identifications. (Ex. A, 846: 21-22; 862:17-867:25; Dkt.

315 at 186:20-187:19; 190:23-191:14). Further, neither witness provided any context for their statements at all. For instance, Russell did not explain what conversation occurred with him and the police, such that the jury could conclude Defendants told him who the offenders were *before* he made the identifications. Similarly, while Fernandez testified that he could not make an identification, he never testified that he told Defendants that Plaintiff and Gomez were *not* involved in the crime. Conversely, whatever the jury believed transpired between him and Defendants, Fernandez testified that he acquiesced that Plaintiff and Gomez were the offenders. Thus, there is no evidence from which the jury could infer that Defendants knew Plaintiff and Gomez were not the true offenders.

What's more, while Plaintiff denied involvement in the crime, he presented *zero* evidence that Gomez was not involved. Quite the opposite, he judicially admitted that Gomez was the shooter, a fact which can also be reasonably inferred from Russell's testimony. (Ex. A, 845:16-19). If both Russell and Fernandez identified Plaintiff and Gomez, and Gomez was the shooter, then there is no conceivable way the jury could find that Defendants knew Russell and Fernandez's identifications of Plaintiff were false. Not only is it impossible for Defendants to have fabricated the identifications that happened to be true, but the fact that identifications of one of the offenders is admittedly accurate, necessarily provides reason to believe the identifications of the other offender were accurate as well. Even so, it is not Defendants' obligation to prove that the identifications were true. It was Plaintiff's burden to prove that Defendants knew they were false. He failed to do so. Without evidence that Defendants had any reason to believe they were not the offenders, Plaintiff did not, as a matter of law, present evidence to prove this claim.

Nor is it enough to say that because the police reports Defendants prepared are inaccurate or misleading the jury could infer Defendants fabricated evidence. The due process clause does

not guarantee perfect police reports or a perfect accounting of an investigation. *Hyung Seok Koh*, 307 F. Supp. 3d at 858. Further, even viewing the evidence in a light most favorable to Plaintiff, what Defendants recorded in their police reports about Russell and Fernandez's identifications is technically accurate. Even if the witnesses offered credible testimony that the police told them who to pick, they both admitted they did make the identifications. Thus, none of the police reports are so deliberately misleading to amount to fabricated evidence. *Id.*

Despite this, Plaintiff asked the jury to disbelieve Defendants' testimony that they inadvertently reported that that they first spoke to Russell on August 2, 2009, when, in fact, they first spoke to him on August 1, 2009. (Ex. A 1638). Even if the jury discredited Defendants' explanation for the error, that still does not establish fabricated evidence. If Defendants considered Plaintiff and Gomez suspects before they spoke to Russell, they would have to have suspected them for *some* reason. According to Plaintiff, they did so because Abdul Wachaa provided them the names. Yet, Plaintiff never presented any evidence of that fact. Yet, even assuming Wachaa did provide them the names, there is still no evidence that Defendants had any reason to disbelieve what Wachaa told them. To the contrary, Wachaa never testified, so Plaintiff could not, and did not, fill that evidentiary gap. And, as stated above, both Russell and Fernandez made the identifications without any assertion that Plaintiff and Gomez were not the offenders. Any argument that Defendants' involvement with Wachaa proves fabrication is, therefore, meritless and, more importantly, does not undercut Defendants' belief in the truthfulness of Russell and Fernandez's identifications.

**B.    Plaintiff Failed to Prove Defendants Withheld Any Material Exculpatory Evidence.**

To prove a due process violation pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963*)*, Plaintiff must establish Defendants withheld exculpatory evidence that would have affected the

outcome of his case.  *Carvajal v. Dominguez*, 542 F.3d 561, 570 (7th Cir. 2008).  In particular,

"[t]o prevail on a *Brady* claim for an officer's failure to disclose evidence, a plaintiff must show

that (1) the evidence was favorable to him; (2) the officer concealed the evidence; and (3) the

outcome would have been different had the evidence been disclosed.  *Gill v. City of Milwaukee,*

850 F.3d 335, 343 (7th Cir. 2017).  Plaintiff's theory at trial is that Defendants failed to disclose

that they knowingly manipulated Russell and Fernandez's identifications.   Plaintiff failed to

prove his theory at trial.

   *Brady* does not require disclosure of exculpatory evidence pretrial.  *See Gill*, 850 F.3d at

343 (citing cases).  The critical question is whether the exculpatory evidence is disclosed "in

time for the defendant to make use of it."  *Id.; United States v. Blake*, 2:16-CR-74 JVB, 2017

WL 6527296, at *3 (N.D. Ind. Dec. 21, 2017).   If the criminal defendant can make use of the

evidence at trial, a subsequent *Brady* claim fails.  *Gill*, 850 F.3d at 343; *United States v.

Almendares,* 397 F.3d 653, 664 (8th Cir. 2005) ("*Brady* does not require pretrial disclosure, and

due process is satisfied if the information is furnished before it is too late for the defendant to use

it at trial."); *United States v. Rogers*, 960 F.2d 1501, 1510 (10th Cir. 1992) ("The *Brady* rule is

not violated when the material requested is made available during trial."); *United States v.

Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988) ("*Brady* does not necessarily require that the

prosecution turn over exculpatory material *before* trial.") (emphasis in original.); *United States v.

Ramirez*, 810 F.2d 1338, 1343 (5th Cir. 1987) ("[T]here is no requirement of pre-trial disclosure

of *Brady* material."); *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986) ("If previously

undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant has

been prejudiced by the delay in disclosure."); *U.S. ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n.1 (2d

Cir. 1974) ("Neither *Brady* nor any other case we know of requires that disclosures under *Brady*

must be made before trial.").  In this case, not only did Plaintiff make use of the alleged exculpatory evidence at his criminal trial, he did so successfully because he was acquitted.

On summary judgment, Plaintiff successfully argued that he could still satisfy the prejudice prong of his *Brady* claim by establishing that no reasonable prosecutor would have continued with the prosecution had he or she known that Defendants influenced the identifications.  (ECF 203, p. 12-13).  Defendants respectfully disagree with the Court's ruling, as there is no support for that theory in the law.  The Seventh Circuit has made clear that irrespective of pretrial detention, if a criminal defendant can make use of the exculpatory evidence at trial, a *Brady* claim cannot stand.  *Gill*, 850 F.3d at 343.  Nevertheless, even if a *Brady* claim can survive if there is sufficient evidence to prove that the charges would have been dismissed pretrial had Defendants informed the prosecutors of Plaintiff's version of Russell and Fernandez's identifications, Plaintiff nevertheless failed to establish that evidence at trial. Plaintiff offered no evidence from his criminal defense attorney or the trial prosecutor to suggest that the charges would have been dropped at any time prior to his acquittal had the alleged exculpatory evidence been disclosed.  In fact, he did not even argue that point.

Nor was there any evidence for the jury to infer that the prosecutor would have dismissed the case.  As stated, Plaintiff presented no evidence Defendants *knew* the identifications of Russell and Fernandez were false.  Russell told the jury that he told the police Plaintiff and Gomez were the offenders (Ex. A, 846: 21-22; 862:17-867:25), and Plaintiff presented no evidence that Russell would have backed off his identifications any earlier than at the criminal trial.  To the contrary, the evidence shows that Russell did not back off, even when he had the opportunity, because he told Plaintiff's investigator that Plaintiff and Gomez were the offenders. (Ex. A 875:3-6).  In addition, Plaintiff presented no evidence that Gomez, who Russell and

Fernandez also identified, was not the true perpetrator. That means that, at most, all that

Plaintiff's evidence shows is that Russell and Fernandez's identifications of him may have been

suggested or influenced by Defendants, but not that he did not actually commit the crime. In that

case, the prosecutor may have simply decided that Defendants' conduct goes to weight of the

evidence, not the admissibility, and proceeded with the prosecution to let the fact-finder decide

culpability. In fact, the evidence is that Plaintiff was acquitted *after* the completion of the trial;

despite Russell and Fernandez's wavering testimony, the prosecutor proceeded with the case.

Thus, because Plaintiff presented no evidence that he was prejudiced, his *Brady* claim fails.

Plaintiff also failed to present evidence that he could not discover evidence of

Defendants' alleged suggestive identifications through the exercise of reasonable diligence.

There is no dispute that the evidence of the alleged suggestive identification was not exclusively

in Defendants' control. Russell and/or Fernandez could have divulged it. While Plaintiff's

investigator interviewed Russell before trial, and Russell did not tell the investigator that the

police told him who to pick out, there is no evidence that Defendants took any affirmative steps

to prohibit him from providing that information. For instance, there is no evidence that

Defendants pressured or threatened Russell to keep the information to himself.[2] *C.f. Newsome v.*

*McCabe*, 319 F.3d 301, 303 (7th Cir. 2003) (witness threatened into silence with fear of

imprisonment by officer defendants who thereby obstructed the ability of the prosecutors and

defense counsel to get at the truth in the criminal trial). To the contrary, based on Russell's

testimony at trial, the jury could easily infer that Russell did not tell the investigator the police

---

[2] Plaintiff tried to insinuate that Russell felt pressure to go along with the "state's theory of the case" because he had recently been arrested on August 3, 2009, but Russell disavowed that theory. Further, he testified that he did not have any memory of being arrested on August 3, 2009. (Ex. A, 846:1-12). Thus, there is no evidence to support Plaintiff's speculation on that point.

told him who to pick out because it never happened or because he intended to convey to Defendants that Plaintiff and Gomez were the actual perpetrators.

As for Fernandez, he too did not offer any evidence that he was pressured to keep the circumstances of his identification a secret. Quite the opposite, his testimony demonstrates that he made the identifications without any cajoling from Defendants at all. Yet, Plaintiff did not offer any evidence that he or his counsel even tried to interview Fernandez pretrial to learn about the circumstances of his identification. Thus, without any evidence that Plaintiff was prohibited from learning the circumstances of Fernandez's identifications by Defendants, Plaintiff failed to establish that Defendants suppressed any evidence concerning his identification.

In addition, the Seventh Circuit has made clear that police do not have to create exculpatory evidence or accurately disclose the circumstances of their investigations to the prosecution. *Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015); nor are they required to investigate on the criminal defendant's behalf. *Harris v. Kuba*, 486 F.3d 101, 1017 (7th Cir. 2007). Accordingly, Plaintiff failed to establish that Defendants concealed any exculpatory evidence with respect to the circumstances of Russell and Fernandez's identifications. *See id.* at 1015 (no suppression under *Brady* where evidence is available to criminal defendant); *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002) (holding evidence not suppressed when it is disclosed to criminal defendant with sufficient time to make use of it).

Plaintiff also claimed that Defendants failed to disclose their conversations with Wachaa and failed to disclose that Wachaa received "consideration" for the information he provided Defendants. As stated, Plaintiff did not prove up this theory. As for the actual evidence, Plaintiff claimed the fact that Wachaa told Defendants that the information he had about the murder was something he heard "on the street" amounts to a recantation. (ECF 309, p. 2). Not

so.  There was no evidence that information Wachaa provided was untrue.  Further, there is no evidence that the Lopez report reflecting the information Wachaa told her had any relevance, much less importance, in the prosecution.  Thus, even if there was something Defendants should have disclosed, Plaintiff did not present any evidence of what, if any, that disclosure would have had on the criminal case.  Further, Plaintiff failed to present any evidence that Wachaa received any "consideration" for his involvement in this case.  It is nothing more than speculation, which is insufficient to survive a motion for judgment as a matter of law.

Finally, Plaintiff claimed that Defendants withheld Russell and Fernandez's accounts of the crime.  Again, that claim is merely speculation.  Plaintiff did not establish what, if anything, Russell and Fernandez told them about the circumstances of the crime that they should have disclosed.  Nor did he establish that that the evidence was not otherwise available to him or would have had any material effect on his case.  Without pointing to some specific piece of evidence that should have been disclosed, Plaintiff's claim is nothing more than speculation, and cannot save his claim.

## III.   NO REASONABLE JURY COULD CONCLUDE THAT DEFENDANTS LACKED PROBABLE CAUSE.

The existence of probable cause defeats Plaintiff's Fourth Amendment pretrial detention claim and his state law malicious prosecution claim.[3]  *See Manuel v. City of Joliet,* 137 S. Ct. 911 (2017); *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 926 (7th Cir. 2001) (the existence of probable cause is an absolute bar to a malicious prosecution claim).  Probable cause is a set of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged.  *Fabiano v. City of Palos*

---

[3] As reflected in the jury instructions, this Court has applied the standard for probable cause for both the illegal detention claim and the malicious prosecution claim.

*Hills*, 336 Ill. App. 3d 635, 642 (1st Dist. 2002). The Seventh Circuit recognizes that if a reasonably credible witness or victim informs the police that someone has committed a crime, the officers have probable cause to make an arrest. *Matthews v. City of East St. Louis*, 675 F.3d 703, 707-08 (7th Cir. 2016); *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir.2007). This is so even when the suspect denies wrongdoing. *See, e.g., Reynolds v. Jamison*, 488 F.3d 756, 762 (7th Cir.2007). In fact, "where the victim of the crime supplies the police with the information forming probable cause, there is a presumption that this information is inherently reliable." *Sang Ken Kim v. City of Chicago*, 368 Ill. App. 3d 648, 655, 858 N.E.2d 569, 575 (1st Dist. 2006), *see also Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009).

Based on the jury's verdict in favor of Plaintiff on the fabricated evidence claim, the jury must have accepted Plaintiff's argument that Defendants fed the names of Plaintiff and Gomez to Russell and Fernandez. But as addressed above, there is no evidence that Defendants fed the names to either witness or, even if Defendants were suggestive, that doing so amounts to fabricated evidence. To the contrary, there is no evidence that Defendants had any reason to believe Plaintiff and Gomez were not the true offenders. Both Russell and Fernandez testified that they saw who committed the crime. (Ex. A, 861:16-862:13; Dkt. 315 at 92:9-16; 165:8-18). Russell testified that he recognized them by face and name, and Fernandez testified that the Russell told him the offenders were Plaintiff and Gomez. (Ex. A, 861:16-862:13; Dkt. 315 at 99:23-101:14; 125:3-126:9; 128:9-14). Further, there was no evidence that Defendants pressured, coerced, or manipulated the witnesses to make the identifications. Nor was there any evidence that Defendants received the names from Wachaa. But, even if they did, Plaintiff did not provide any evidence that receiving a "tip" from Wachaa gave Defendants reason to believe Russell and Fernandez's identifications were not true. Added to that, the only evidence

presented to the jury about Gomez established that he was the shooter, a fact Plaintiff admitted and presented no evidence to suggest otherwise.  Necessarily then, Defendants were justified in their belief that Gomez was the offender, and Plaintiff offered no reason for the jury to conclude that Defendants would be justified in their belief that Gomez committed the crime, but not justified in their belief that Plaintiff did.  Accordingly, there was no evidentiary basis for the jury to conclude that Defendants did not justifiably rely on Russell and Fernandez's identifications in pursuing charges against Plaintiff.

What's more, besides Russell and Fernandez, Defendants had additional evidence to establish probable cause.  For instance, the investigation revealed that members of the Spanish Cobras were responsible for the crime, and Plaintiff admitted that he was a Spanish Cobra. Russell agreed to have his interview with ASA Gudino video recorded.  (Ex. A 847:23-848:7; 868:11-869:13; 1257:7-1258:18).   Both Russell and Fernandez testified under oath at the grand jury.  (Ex. A 1541:1-4).  Plaintiff lied to Defendants about whether he knew Gomez.  (Ex. A 357:15-358:5).  Plaintiff fled to Rochelle after he was initially released on August 5, 2009, suggesting consciousness of guilt.  (Ex. A 378:25-379).  And, the alibis Plaintiff provided were not substantiated.  (Ex. A 1009:20-1018:22).

The evidence Plaintiff presented does not undercut a finding of probable cause.  The fact that Plaintiff denied wrongdoing is not dispositive.  *See Reynolds*, 488 F.3d at 762, *supra*. Further, Defendants did not have the results of any forensic testing before the charging stage of the process.  And, finally, there was no evidence that Defendants should have believed Russell's "first story" that Russell could not make any identification because Plaintiff offered no evidence that his eventual identification of Gomez was inaccurate, or that Defendants should have disbelieved Russell when he told them Plaintiff was the second offender.  Because of the

existence of probable cause, Plaintiff's pretrial detention claim and state law malicious prosecution claim fail as a matter of law.

Moreover, Plaintiff failed to present evidence to establish the malice prong of his malicious prosecution claim against Defendant Folino. As stated, there was no evidence for Defendants to believe Russell and Fernandez's identifications of Plaintiff were inaccurate. As such, Plaintiff presented no evidence for the jury to conclude that Defendant Folino pursued criminal charges against Plaintiff for any reason other than to bring the true perpetrator to justice.

## IV. NO REASONABLE JURY COULD FIND DEFENDANTS LIABLE ON PLAINTIFF'S DERIVATIVE CLAIMS.

Plaintiff's remaining claims are Section 1983 conspiracy and failure to intervene claims. These claims are derivative of his Section 1983 due process claim. For the reasons stated above, because no reasonable jury could find Defendants liable on Plaintiff's due process claim, the court should direct a verdict in Defendants' favor on the derivative claims. *See Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999) (holding the absence of any underlying violation of the Plaintiffs' constitutional rights precludes the possibility of succeeding on a conspiracy claim); *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (concluding that in order for there to be a failure to intervene, there must be an underlying constitutional violation).

In addition, Plaintiff's evidence was insufficient to establish his conspiracy claim because he did not present any evidence on any agreement between to Defendant Folino and McDermott. There is no evidence that either one of them had any prior intention of violating Plaintiff's rights, much less that they talked about it or decided on it beforehand. For this reason, Plaintiff's conspiracy claim fails.

# V.	DEFENDANT MCDERMOTT'S PERSONAL INVOLVEMENT

To succeed on any claims against Defendant McDermott, Plaintiff must have established his personal involvement in the alleged constitutional violations. Personal involvement is a prerequisite to liability under Section 1983, and Section 1983 defendants cannot be vicariously liable for the conduct of others. *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997); *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) (Section 1983 requires proof that the individual caused or participated in the constitutional violation). While Defendant Folino testified that Defendant McDermott participated with him in the investigation of the Patel homicide, Plaintiff did not elicit any of the alleged (and speculative) circumstantial evidence against Defendant McDermott as he did with Defendant Folino. For instance, Plaintiff did not tie any of the purported Abdul Wachaa conspiracy to Defendant McDermott. If the Court finds there was sufficient evidence for the jury to conclude that Defendant Folino obtained the names Rowdy and Lil David from Wachha before speaking with Russell, there is no evidence that Defendant McDermott was aware of that fact. Nor did Plaintiff offer any of the same circumstantial (and speculative) evidence regarding incomplete or misleading reports against Defendant McDermott, like he did with Defendant Folino, as all of the evidence introduced related to Folino's reports. As such, Plaintiff failed to offer sufficient evidence for the jury to conclude that Defendant McDermott was personally involved in any of the alleged constitutional violations.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants McDermott and Folino respectfully request this Honorable Court grant its motion for judgment as a matter of law on all Plaintiff's claims and for any other relief it deems just and equitable.

Dated:       October 31, 2018                Respectfully submitted,
                                            TIMOTHY McDERMOTT & JOHN
                                            FOLINO, JR.


                                            By: _____/s/___*Eileen E. Rosen*_____
                                                    One of their attorneys

Eileen E. Rosen
Stacy A. Benjamin
Catherine M. Barber
Andrew J. Grill
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
312.494.1000
312.494.1001- fax
erosen@rfclaw.com