# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY KURI, | ) | |
| (a.k.a. Ramsey Qurash) | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13 C 1653 |
| | ) | |
| THE CITY OF CHICAGO, et al. | ) | Judge Edmond E. Chang |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS JOHN FOLINO AND TIMOTHY McDERMOTT'S
## RULE 59(a) MOTION FOR A NEW TRIAL

TABLE OF CONTENTS

**INTRODUCTION**……………………………………………………………………1

**LEGAL STANDARD**………………………………………………………………1

I.    THE JURY'S VERDICT ON PLAINTIFF'S DUE PROCESS
CLAIMS WAS AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE....……………………………………………………........3

    A.  Speculation is Insufficient to Prove that Defendants Manipulated or
Fabricated Plaintiff's Identification…………………………………………...3

    B.  The Jury's Verdict on Plaintiff's *Brady* Claim is Against the Manifest
Weight of the Evidence Because Plaintiff was Acquitted……………………..8

    C.  Speculation is Insufficient to Prove that Defendants Withheld Evidence
That They Manipulated or Fabricated Plaintiff's Identification……………...10

    D.  The Jury's Verdict Against McDermott is Against the Manifest
Weight of the Evidence Because there is no Evidence that
McDermott was Personally Involved in Depriving Plaintiff of
His Constitutional Rights……………………………………………………12

II.    THE JURY'S VERDICTS ARE INCONSISTENT AND
MUST BE REVERSED………………………………………………………...13

    A.  The Jury's Malicious Prosecution Verdict in Favor of McDermott is
Inconsistent with the Jury's Verdicts on Plaintiff's Other Claims Against
McDermott and Must be Reversed…………………………………………...13

    B.  The Jury's Verdict Against Folino for Malicious
Prosecution is Inconsistent with the Jury's Finding
in Favor of McDermott on that Charge and Must be Reversed………………14

III.    NO REASONABLE JURY COULD CONCLUDE THAT THERE
WAS A LACK OF PROBABLE CAUSE TO CHARGE PLAINTIFF
AS THE ACCOMPLICE IN THE PATEL HOMICIDE……………………….…..15

IV.    NO REASONABLE JURY COULD FIND DEFENDANTS
LIABLE ON PLAINTIFF'S DERIVATIVE CLAIMS………………………….18

V.    THE JURY'S AWARD FOR LOSS OF A NORMAL LIFE
WAS UNSUPPORTED BY THE EVIDENCE………………………………….19

CONCLUSION………………………………………………………………………..23

CASES

75A Am. Jur. 2d Trial § 869………………………………………………………………….2, 5

*Avery v. City of Milwaukee,* 847 F.3d 433, 439 (7th Cir. 2017)………………………………4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)………………………………………...4

*Ben Halim v. Ashcroft*, 107 F. App'x 1, 6 (7th Cir. 2004)…………………………………………7

*Bob Willow Motors, Inc. v. Gen. Motors Corp.,* 872 F.2d 788, 798 (7th Cir.1989)………………...2

*Byrd v. Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525, 540 (1958)……………………………2

*Carvajal v. Dominguez*, 542 F.3d 561, 570 (7th Cir. 2008)………………………………………...8

*Daffinrud v. United States,* 145 F.2d 724, 725 (7th Cir. 1944)…………………………………2, 5

*Deloughery v. City of Chicago*, 422 F.3d 611, 617 (7th Cir. 2005)…………………………3, 13

*Fabiano v. City of Palos Hills,* 784 N.E.2d 258, 266 (Ill. App. 2002)……………………………15

*Franklin v. Fewell,* No. 3:13-CV-673 JD, 2015 WL 3999467………………………………………...7

*Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 433 (1996)…………………………………1

*Gill v. City of Milwaukee,* 850 F3d 335, 343 (7th Cir. 2017)…………………………………...8, 9

*Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997)……………………………………...12

*Hampton v. City of Chicago*, No. 12-CV-5650, 2017 WL 2985743 (N.D. Ill. July 13, 2017)…….10

*Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)…………………………………………...18

*Holland v. City of Chicago*, 643 F.3d 248, 256 (7th Cir. 2011)…………………………………...10

*Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir.2007)……………………………15

*Hyung Seok Koh v. Graf*, 307 F. Supp. 3d 827, 858 (N.D. Ill. 2018)………………………………4

*Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999)……...18

*Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009)……………………………………………15

*King v. Harrington,* 447 F.3d 531, 534 (7th Cir.2006)…………………………………………….2

*Klingelhoets v. Charlton-Perrin*, 2013 IL App (1st) 112412, 983 N.E.2d 1095, 1104……………21

*Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012)……………………………………………12

*Lawler v. MacDuff*, 335 Ill. App. 3d 144, 155–56, 779 N.E.2d 311, 322 (2d Dist. 2002)…………21

*Logan v. Caterpillar, Inc.,* 246 F.3d 912, 926 (7th Cir. 2001)…………………………………………15

*Manuel v. City of Joliet,* 137 S. Ct. 911 (2017)……………………………………………………...15

*Matthews v. City of East St. Louis*, 675 F.3d 703, 707-08 (7th Cir. 2016)………………………...15

*Mejia v. Cook Cty., Ill*., 650 F.3d 631, 634 (7th Cir. 2011)………………………………………2, 5

*Moffett v. Sandoval*, No. 10-CV-5324, 2012 WL 2526624, at *2 (N.D. Ill. June 28, 2012)………..5

*Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251……………………………………………..2

*Moss v. Campbell*, No. 3:07-CV-402TLS, 2007 WL 3333395……………………………………….4

*O'Sullivan v. City of Chicago,* 474 F.Supp.2d 971, 982 (N.D.Ill.2007)…………………………..19

*Ocampo v. Paper Converting Mach. Co*., 02 C 4054, 2005 WL 2007144

     (N.D. Ill. Aug. 12, 2005)…………………………………………………………………...19, 21

*Petty v. City of Chicago,* 754 F.3d 416, 423 (7th Cir. 2014)………………………………………..4

*Reynolds v. Jamison*, 488 F.3d 756, 762 (7th Cir.2007)……………………………………………15

*Sang Ken Kim v. City of Chicago*, 368 Ill. App. 3d 648, 655, 858 N.E.2d

     569, 575 (1st Dist. 2006)……………………………………………………………………15

*Shaw v. Buchner*, No. 16-CV-1112-SMY-RJD, 2018 WL 3083878………………………………7

*Smart Mktg. Grp. v. Publ'ns Int'l Ltd.,* 624 F.3d 824, 832 (7th Cir.2010)…………………………2

*Smith v. Altman*, 12 C 4546, 2015 WL 5610670, at *3 (N.D. Ill. Sept. 21, 2015)………..20, 22, 23

*Stift v. Lizzadro*, 362 Ill. App. 3d 1019, 1028–29, 841 N.E.2d 126, 134 (1st Dist. 2005)……19, 22

*Tayborn v. Scott*, 251 F.3d 1125, 1131 (7th Cir. 2001)…………………………………………...16

*Thompson v. Mem'l Hosp. of Carbondale,* 625 F.3d 394, 408 (7th Cir.2010)……………………19

*United States v. Hamilton*, 107 F.3d 499, 510 (7th Cir. 1997)…………………………………10

*United States v. Morris,* 957 F.2d 1391, 1403 (7th Cir.1992)…………………………………11

*United States v. Navarro,* 737 F.2d 625, 631 (7th Cir.1984)…………………………………...11

*United States v. Parks,* 100 F.3d 1300, 1307 (7th Cir.1996)…………………………………...10

*United States v. Roberts,* 534 F.3d 560, 572 (7th Cir.2008)……………………………………..4

*United States v. Washington,* 184 F.3d 653, 658 (7th Cir.1999)……………………………2, 5, 8

*Valbert v. Pass,* 866 F.2d 237, 239 (7th Cir. 1989)……………………………………………..1

*Will v. Comprehensive Accounting Corp.,* 776 F.2d 665, 677 (7th Cir.1985)…………………2, 13

*Wrice v. Burge,* 187 F. Supp. 3d 939, 953 (N.D. Ill. 2015)………………………………………4

Defendants, John Folino and Timothy McDermott, by their undersigned counsel, hereby move for a new trial, pursuant to Fed. R. Civ. P. 59(a). In support, Defendants state as follows:

## INTRODUCTION

In 2013, Plaintiff, Anthony Kuri brought this lawsuit alleging violations of his constitutional rights when he was arrested, charged and acquitted of the 2009 murder of Gaurav Patel and attempted murder of Tony Fernandez.  The case proceeded to trial on September 24, 2018 alleging Section 1983 violations of due process, unlawful pretrial detention, conspiracy to deprive constitutional rights, failure to intervene, and a state law claim for malicious prosecution against Defendants Folino and McDermott.[1]  Specifically, Plaintiff alleged that Folino and McDermott violated his constitutional rights to a fair trial by manipulating eye-witnesses Zay Russell and Tony Fernandez to falsely implicate him in the crime and withheld that evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and lacked probable cause for his detention and prosecution.  On October 2, 2018, the jury returned verdicts in favor of Plaintiff and against Defendants on all his claims, except for the malicious prosecution claim against McDermott, awarding Plaintiff $4 million in compensatory damages.  Plaintiff was also awarded $40,000 in punitive damages against Defendant Folino and $10,000 against Defendant McDermott.  Defendants have filed a separate motion under Fed. R. Civ. P. 50(b) for judgment as a matter of law.  Should the Court deny that motion, Defendants move here for a new trial pursuant to Rule 59(a).

## LEGAL STANDARD

A court "has great discretion in determining whether to grant a new trial." *Valbert v. Pass,* 866 F.2d 237, 239 (7th Cir. 1989).  The Supreme Court has long recognized that a district court

---

[1] The claims against the City of Chicago were not tried because the City of Chicago's motion to bifurcate was granted on November 24, 2014 (*see* ECF No. 86).

can grant a motion for a new trial if the verdict was against the weight of the evidence. *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 433 (1996); *Byrd v. Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525, 540 (1958); *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251. In ruling on a motion for a new trial, the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial. *See, e.g., Byrd,* 356 U.S. at 540 ("The trial judge in the federal system has powers denied the judges of many States to comment on the weight of evidence and credibility of witnesses...."); *United States v. Washington,* 184 F.3d 653, 658 (7th Cir.1999) ("In considering the weight of the evidence, the court must necessarily consider the credibility of the witnesses."); *Bob Willow Motors, Inc. v. Gen. Motors Corp.,* 872 F.2d 788, 798 (7th Cir.1989) ("In ruling on a motion for a new trial, the judge may consider the credibility of witnesses, the weight of the evidence, and anything else which justice requires."). If, after evaluating the evidence, the district court is of the opinion that the verdict is against the manifest weight of the evidence, a new trial is appropriate. *King v. Harrington,* 447 F.3d 531, 534 (7th Cir.2006). A verdict is against the manifest weight of the evidence, when, after considering the credibility of the witnesses and the reasonable inferences drawn therefrom, the court determines that the trier of fact lost its way, causing a manifest miscarriage of justice, necessitating the reversal of the jury's verdict and a new trial. *United States v. Washington*, 184 F.3d 653, 657–58 (7th Cir. 1999) (collecting cases); *Daffinrud v. United States*, 145 F.2d 724, 725 (7th Cir. 1944); *Mejia v. Cook Cty., Ill.*, 650 F.3d 631, 634 (7th Cir. 2011); *See also* 75A Am. Jur. 2d Trial § 869. A motion for a new trial may be granted even if a motion for judgment as a matter of law must be denied. *See Smart Mktg. Grp. v. Publ'ns Int'l Ltd.,* 624 F.3d 824, 832 (7th Cir.2010); *Mejia,* 650 F.3d at 634. Additionally, "as a rule, civil juries must return consistent verdicts." *Will v. Comprehensive Accounting Corp.,* 776

F.2d 665, 677 (7th Cir.1985). A new trial on all claims is the appropriate remedy (rather than judgment as a matter of law) in a case in which the jury has returned inconsistent verdicts. *Deloughery v. City of Chicago*, 422 F.3d 611, 617 (7th Cir. 2005).

Here, Plaintiff failed to elicit any evidence at trial in support of any of his claims beyond mere speculation and the incredible testimony of Russell and Fernandez. As such, the verdicts were against the manifest weight of the evidence and this Court must reverse the jury's judgment and grant Defendants a new trial. Defendants are also entitled to a new trial because the jury's verdicts are inconsistent. The jury found in favor of Defendant McDermott on Plaintiff's malicious prosecution claim. Yet, according to its verdict, the jury also found that Defendant McDermott fabricated evidence, withheld evidence, lacked probable cause for Plaintiff's pretrial detention, and conspired with Defendant Folino in violation of Plaintiff's constitutional rights. Those findings are necessarily in conflict with each other, necessitating a new trial. Similarly, since the evidence presented against both Defendants in support of Plaintiff's malicious prosecution claim was virtually identical, the jury's verdict against Defendant Folino for malicious prosecution is inconsistent with the jury's finding in favor of McDermott on that charge. As such, Defendant Folino is entitled to a new trial on Plaintiff's malicious prosecution claim.

## I. THE JURY'S VERDICT ON PLAINTIFF'S DUE PROCESS CLAIMS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### A. Speculation is Insufficient to Prove that Defendants Manipulated or Fabricated Plaintiff's Identification.

Plaintiff generated no evidence at trial, beyond mere speculation and the incredible testimony of Russell and Fernandez, that Defendants manipulated or fabricated Russell and Fernandez's identifications of Plaintiff. Accordingly, the jury's conclusion that Defendants did so is against the manifest weight of the evidence. To prove Defendants violated Plaintiff's right to

due process by fabricating evidence, Plaintiff must prove that Defendants manufactured evidence that deprived Plaintiff of his liberty. *Avery v. City of Milwaukee,* 847 F.3d 433, 439 (7th Cir. 2017). Fabricated evidence is evidence that the defendants created knowing it to be false. *Id.* (*quoting Petty v. City of Chicago,* 754 F.3d 416, 423 (7th Cir. 2014)). In fabrication cases, there is a distinction between fabricated evidence and coerced evidence. The Seventh Circuit explained that fabricated evidence is evidence "known to be untrue by the witness and by whoever cajoled or coerced the witness to give it;" it is "made up" and "invariably false." *Petty v. City of Chicago*, (7th Cir. 2014). By contrast, "getting a reluctant witness to say what may be true" is not fabrication. What is necessary is some factual basis to show that Defendants *knew* the evidence they collected was false. *Id.*; *Hyung Seok Koh v. Graf*, 307 F. Supp. 3d 827, 858 (N.D. Ill. 2018); *Wrice v. Burge,* 187 F. Supp. 3d 939, 953 (N.D. Ill. 2015) (dismissing fabrication claim where there were no facts to suggest defendants knew the alleged fabricated evidence was false).

Here, Plaintiff presented no evidence, other than speculation, that Defendants manipulated or fabricated Russell and Fernandez's identifications of Plaintiff. A due process claim cannot be based on mere speculation. *Moss v. Campbell*, No. 3:07-CV-402TLS, 2007 WL 3333395, at *2 (N.D. Ind. Nov. 8, 2007) citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *United States v. Roberts,* 534 F.3d 560, 572 (7th Cir.2008) (there must be some evidence other than mere speculation or conjecture that a party's due process rights were violated). In regards to Russell's identification of Plaintiff, Plaintiff asked the jury to speculate that Defendants convinced Russell to change his story from saying he didn't know who shot him to saying Plaintiff shot him (Trial Transcript, 469:1-3; 528:14-529:6, attached hereto as Ex. A); to speculate that the police had no basis to arrest Russell on-scene (Ex. A, 519:15-520:5); to speculate that Defendants threatened to charge Russell with Patel's murder if he did not change his story (Ex. A, 478:21-481:2); to

4

speculate that Russell cooperated with the police only because Folino was holding charges related to Russell's August 3, 2009 arrest over his head (Ex. A, 804:25-809:2); and to speculate that Folino controlled what Russell told the State's Attorney.  (Ex. A, 1072:5-1073:15).[2]  Despite this, no witness, including Russell, testified at trial that Defendants convinced Russell to change his story, or that Defendants threatened to charge Russell with Patel's murder in order to manipulate him, or that Folino used Russell's August 3, 2009 arrest for leverage.  To the contrary, Folino's unimpeached testimony was that he did not give Russell any consideration on his August 3, 2009 charges in exchange for assisting in the Patel homicide investigation (Ex. A, 764:9-765:7) and Russell stated that the police never talked to him about those charges.  (Ex. A, 846:10-12).

Likewise, Russell and Fernandez attacked their own integrity to such an extent that no reasonable jury could believe any of their testimony to a degree sufficient to establish Plaintiff claims.  When considering the weight of the evidence, the court must necessarily consider the credibility of the witnesses.  *Moffett v. Sandoval*, No. 10-CV-5324, 2012 WL 2526624, at *2 (N.D. Ill. June 28, 2012).  A finding of liability based on admissible but incredible testimony is against the manifest weight of the evidence and requires a new trial.  *See United States v. Washington*, 184 F.3d 653, 657-658 (7th Cir. 1999) (a conviction based on admissible but incredible testimony was against the manifest weight of the evidence, requiring new trial.)  For example, Fernandez, testified to the Grand Jury that Plaintiff was one of the attackers.  (Fernandez Dep., 175:7-178:6, ECF No.

---

[2] Proof of Plaintiff's counsel's intent to confuse the jury with speculation is found in the fact that out of five trial days Plaintiff utilized to prove his case, he spent four days with Folino on the stand, crossing him about the minutiae of the investigation and asking no less than 161 questions to which defense counsel objected; 87 of those objections were sustained.  This intense and unwarranted scrutiny on Folino, combined with the Russell and Fernandez's unbelievable testimony and the inordinate amount of speculation, caused the jury to lose its way.  A verdict is against the manifest weight of the evidence, when, after considering the credibility of the witnesses and the reasonable inferences drawn therefrom, the court determines that the trier of fact lost its way, causing a manifest miscarriage of justice, necessitating the reversal of the jury's verdict and a new trial.  *Washington*, 184 F.3d at657–58 (collecting cases); *Daffinrud*, 145 F.2d at725; *Mejia*, 650 F.3d at634; *See also* 75A Am. Jur. 2d Trial § 869.

315, Ex. 82). At Plaintiff's criminal trial, Fernandez testified that no one told him who to pick out in any photo array. (*Id.*, 251:17-252:8). At his deposition, Fernandez testified that he identified Plaintiff because Russell, not the police, "specifically" told him that Plaintiff was one of the attackers (*Id.*, 99:23-101:14; 125:3-126:9; 128:9-14) while also claiming that he identified Plaintiff because a detective showed him a picture of Plaintiff, and said, "oh, here, these are your guys." (*Id.*, 112:18-24; 119:20-121:11). Fernandez acknowledged the disparities in his varying accounts of the shooting and admitted that his Grand Jury testimony would make "everything I just told you [in my deposition about the shooting] from the beginning…wrong." (*Id.*, 18:20-181:4). Fernandez sought to avoid that conclusion by claiming to not remember ever telling the police Plaintiff attacked him, by claiming his Grand Jury and criminal trial testimony were a "lie," and suggesting that the transcripts of his testimony were fake. (*See Id.*, 175:7-178:6; 180:19-21; 247:7-248:20). In addition to these materially inconsistent accounts, Fernandez could not tie any of this to Defendants because he could not recall the person that showed him the photo of Plaintiff (*Id.*, 195:21-196:9) nor did the names "Folino" and "McDermott" refresh his memory. (*Id.*, 183:22-184:5). And, Plaintiff's counsel's attempt to salvage Fernandez's credibility by suggesting that Fernandez identified Plaintiff because Defendants offered to or did pay off Fernandez is a non-starter. (Ex. A, 785:21-787:16). Fernandez never testified that anything he ever said (or may have said) to the police was a result of having been promised money by anyone. (*Id.*, 115:6-116:7; 200:4-204:18). And, Russell testified that the police never told him that they paid Fernandez for his identification of Plaintiff. (Ex. A, 842:10-12).

Russell admitted that he saw the individuals who attacked him and recognized them as two Spanish Cobras that he knew by name. (Ex. A, 861:16-862:13). He admitted that he told the police that Plaintiff was one of the people he saw on the bike that attacked him and that he told the

police Plaintiff's nickname. (Ex. A, 862:17-864:7). He admitted that the police showed him a photo array (Ex. A, 864:8-867:25); that the police did not tell him that they thought they knew who shot at him prior to showing Russell the photo array (Ex. A, 838:19-841:4); and that the police did not tell him who to pick out. *Id.* Russell testified to this, despite Plaintiff's counsel's attempt to impeach Russell with his criminal trial testimony where he refused to identify Plaintiff as his attacker. (Ex. A, 841:5-842:9; 846:23-847:5). Despite all of his admissions, Russell impeached himself when he testified that he "can't remember" whether he testified truthfully at Plaintiff's criminal trial (Ex. A, 854:4-9); that Plaintiff was not one of the two people he saw attack him (Ex. A, 845:13-19); that he did not see Plaintiff riding a bike on the night of the shooting (Ex. A, 837:15-21; 843:21-844:1); and that before the police showed him the photo array, they told Russell that they knew who shot him and told Russell who to pick. (Ex. A, 854:10-15; 879:11-17).

In light of the above, Russell and Fernandez's trial testimony is inconsistent to such an extent that the unavoidable conclusion is that each is lying about his identification of Plaintiff having been influenced by Defendants. The conclusion that they are lying, in light of such serious inconsistencies, is well-supported by courts in this Federal Circuit. *Ben Halim v. Ashcroft*, 107 F. App'x 1, 6 (7th Cir. 2004) (adverse credibility finding supported by numerous conflicts between witnesses interview and hearing testimony, all of which went to the heart of his claims); *Franklin v. Fewell,* No. 3:13-CV-673 JD, 2015 WL 3999467, at *1 (N.D. Ind. July 1, 2015) (judge concluded witness was not credible based on his demeanor and inconsistencies in his testimony); *Shaw v. Buchner*, No. 16-CV-1112-SMY-RJD, 2018 WL 3083878, at *2 (S.D. Ill. June 22, 2018) (witness's testimony was not credible because he provided conflicting testimony). As such, Russell and Fernandez's testimony provides no trustworthy basis for the jury's conclusion that Defendants knew Plaintiff was innocent, fed Plaintiff's name to Russell and Fernandez anyway,

and withheld that evidence. And, even if the jury believed Russell and Fernandez got Plaintiff's name from Defendants, there was no evidence presented that Defendants knew Plaintiff was innocent prior to his criminal trial. In fact, as set forth in Section II, below, the evidence the jury considered clearly suggested the opposite is true because the evidence before the jury established that Defendants were correct that Gomez was involved in the shooting. (*See* ECF No. 268, Order on Def. Mtn. *in Limine*). A jury finding based on admissible but incredible testimony is against the manifest weight of the evidence. *United States v. Washington*, 184 F.3d at 657-658. Accordingly, a new trial must be granted because neither eye-witness offers credible evidence to support the jury's verdict that Defendants manipulated or fabricated Plaintiff's identification.

### B. The Jury's Verdict on Plaintiff's *Brady* Claim is Against the Manifest Weight of the Evidence Because Plaintiff was Acquitted.

To prove a due process violation based on *Brady v. Maryland*, Plaintiff must establish Defendants withheld exculpatory evidence that would have affected the outcome of his case. *Carvajal v. Dominguez*, 542 F.3d 561, 570 (7th Cir. 2008). Specifically, the Seventh Circuit instructs that "[t]o prevail on a *Brady* claim for an officer's failure to disclose evidence, a plaintiff must show that (1) the evidence was favorable to him; (2) the officer concealed the evidence; and (3) the outcome would have been different had the evidence been disclosed." *Gill v. City of Milwaukee,* 850 F3d 335, 343 (7th Cir. 2017).

Plaintiff's theory at trial was that Defendants failed to disclose that they knowingly manipulated or fabricated Russell and Fernandez's identifications. As set forth in Defendants' Rule 50(b) motion, *Brady* does not require disclosure of exculpatory evidence pretrial.[3] The critical question is whether the exculpatory evidence is disclosed "in time for the defendant to

---

[3] Defendants adopt the arguments in their Rule 50(b) motion regarding the inadequacy of Plaintiff's *Brady* claim, herein by reference.

make use of it." *Gill,* 850 F3d at 343. If the criminal defendant can make use of the evidence at trial, a subsequent *Brady* claim fails. *Id.* In this case, not only did Plaintiff make use of the alleged exculpatory evidence at his criminal trial, he did so successfully because he was acquitted. Thus, the undisputed evidence at trial of the acquittal establishes that the third element of the claim - the outcome of the trial would have been different – cannot be satisfied. The jury's verdict to the contrary, therefore, was against the manifest weight of the evidence.

Furthermore, even if the law permits a viable *Brady* claim despite an acquittal, Plaintiff was required to prove that the charges against him would have been dismissed pretrial had Defendants disclosed to prosecutors Plaintiff's version of Russell and Fernandez's identifications. *See* jury instruction Dkt. 311-1 at 20 ("Evidence is considered "material" to a criminal case if there is a reasonable likelihood that the evidence's disclosure would affect the outcome of the criminal case.") Yet, Plaintiff never established that his criminal charges would have been dismissed, pretrial, had prosecutors learned that Defendants obtained Plaintiff's name from Wachaa and fed it to Plaintiff and Gomez; that Defendants used promises of victim compensation money in order to influence Fernandez's identification of Plaintiff; or that Defendants used Russell's August 3, 2009 arrest as leverage to gain his compliance in their plot to frame Plaintiff. Plaintiff offered no evidence from his criminal defense attorney or the trial prosecutor from which the jury could have concluded that the charges would have been dropped some time prior to his acquittal had the alleged exculpatory evidence been disclosed. Nor did Plaintiff adduce any evidence for the jury to infer that would have been the case. In fact, the evidence supports the opposite.

The undisputed evidence at trial was that Gomez was correctly identified by both Russell and Fernandez as the shooter. Plaintiff presented no evidence Defendants *knew* the identifications of Russell and Fernandez were false. Russell admitted at trial that he did tell the police Rowdy

and Gomez were the offenders, and Plaintiff presented no evidence that Russell would have backed

off his identifications any earlier than at the criminal trial. Instead, the evidence introduced at trial

established that Russell did not back off his identifications prior to the criminal trial even when he

had the opportunity to do so. Russell testified that he told Plaintiff's investigator, Stephen Ramsey,

that Plaintiff and Gomez were, in fact, the offenders. (Ex. A, 387:22-388:4; 872:16-875:6). In

addition, Plaintiff presented no evidence that Gomez was not the shooter. In fact, Plaintiff

judicially admitted that Gomez *was* the shooter. (*See* Order on Def. Mtn. *in Limine*, 1-2, ECF No.

268). That means, at most, all that Plaintiff's evidence showed is that Russell and Fernandez's

identifications of him may have been suggested or influenced by Defendants, but not that he did

not actually commit the crime. In that case, the only reasonable inference from the evidence

presented is that the prosecutor may have simply decided that Defendants' conduct goes to weight

of the evidence, not the admissibility, and proceeded with the prosecution. Because Plaintiff

presented no evidence to suggest otherwise, the jury's verdict on Plaintiff's *Brady* claim is against

the manifest weight of the evidence.

### C. Speculation is Insufficient to Prove that Defendants Withheld Evidence That They Manipulated or Fabricated Plaintiff's Identification.

"[A] *Brady* violation does not arise due to nothing more than a possibility that the

undisclosed item might have helped the defense." *Hampton v. City of Chicago*, No. 12-CV-5650,

2017 WL 2985743, at *20 (N.D. Ill. July 13, 2017) quoting *United States v. Hamilton*, 107 F.3d

499, 510 (7th Cir. 1997); *see also Holland v. City of Chicago*, 643 F.3d 248, 256 (7th Cir. 2011)

("The mere possibility that an item of evidence may have helped a defendant during his trial on

criminal charges does not establish materiality."); *United States v. Parks,* 100 F.3d 1300, 1307

(7th Cir.1996) ("speculation is not enough to establish that the Government has hidden evidence").

A "due process standard which is satisfied by mere speculation would convert *Brady* into a

discovery device and impose an undue burden upon the district court." *United States v. Morris,* 957 F.2d 1391, 1403 (7th Cir.1992) quoting *United States v. Navarro,* 737 F.2d 625, 631 (7th Cir.1984).

In regards to Fernandez, the evidence elicited at trial does not support a finding that Folino withheld any material exculpatory evidence arising from his initial encounter with Fernandez at the hospital. While Plaintiff did prove that Folino did not document all of the details of his initial interview with Fernandez, (Ex. A, 791:11-23), beyond that, Plaintiff only offered speculation of what Fernandez might have said about a "bike" or "pegs" or anyone named "Rowdy" being involved in what occurred. (Ex. A, 610:1-5; 1031:10-1032:9). Likewise, Plaintiff did not garner any evidence that Fernandez actually did or did not say those things or that Folino asked questions about those topics during their initial encounter. (Ex. A, 604:25-605:10; 631:7-21).

Similarly, Plaintiff's claim that Folino hid that he first learned about Plaintiff's involvement in the shooting from Abdul Wachaa (the "Wachaa tip") and fed the "Wachaa tip" to Russell is also pure speculation. Indeed, Plaintiff asked the jury to speculate that the "Wachaa tip" didn't come from Russell (Ex. A, 1057:1-1058:10); to speculate that Folino had Plaintiff's name from Wachaa before he met with Russell on August 1, 2009 (Ex. A, 1066:5-15); to speculate that Folino talked to Wachaa about the Patel homicide before Wachaa was arrested on August 3, 2009 (Ex. A, 1059:20-25); to speculate that Wachaa got a break on his pending felony battery charge as a result of providing information on the Patel homicide (Ex. A, 543:22-546:9; 764:22-765:7); to speculate that Wachaa was Folino's confidential informant at the time of the Patel homicide (Ex. A, 1075:8-10); to speculate that Folino's undocumented interactions with Wachaa contained exculpatory information (Ex. A, 549:13-15); and to speculate that Folino (somehow) "got Zay Russell and Tony Fernandez to identify [Plaintiff]" and go along with Folino's false identification

of Plaintiff. (Ex. A, 563:23-25; 591:18-22; 616:14-20).

Beyond speculation, there was also no evidence offered at trial from any other source that any of this happened. For example, Wachaa did not testify at trial. Fernandez offered no testimony about Wachaa. Russell's only testimony about Wachaa was that he did not remember if he called Wachaa during the shooing or if the police ever asked him if he did so. (Ex. A, 843:15-20). As such, Folino's testimony was unimpeached – that he learned about Plaintiff's involvement from Russell, not Wachaa (Ex. A, 616:21-23); "several days" after Wachaa's arrest on August 3, 2009 (Ex. A, 536:12-20; 967:22-24) and that Wachaa did not become a confidential information until 2015, three years after Plaintiff's criminal trial concluded. (Ex. A, 534:22-535:17). Against this backdrop, there was insufficient evidence from which the jury could have concluded that Defendants withheld exculpatory evidence from Plaintiff.

### D. The Jury's Verdict Against McDermott Is Against the Manifest Weight of the Evidence Because there is no Evidence that McDermott was Personally Involved in Depriving Plaintiff of His Constitutional Rights.

To succeed on any claims against Defendant McDermott, Plaintiff must have established his personal involvement in the alleged constitutional violations. Personal involvement is a prerequisite to liability under Section 1983, as defendants cannot be vicariously liable for the conduct of others. *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997); *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) (Section 1983 requires proof that the individual caused or participated in the constitutional violation). While Defendant Folino testified that Defendant McDermott participated with him in the investigation of the Patel homicide, as discussed in Section I(A) above, the speculative evidence Plaintiff developed and which the jury must have relied upon related to Folino's actions, was insufficient. There was even less evidence developed regarding McDermott's actions. For instance, Plaintiff did not tie any of the purported Abdul Wachaa "tip"

evidence to Defendant McDermott. Even if the Court finds there was sufficient evidence for the jury to conclude that Defendant Folino obtained the names Rowdy and Lil David from Wachaa before speaking with Russell, there was no evidence presented at trial to establish or infer that Defendant McDermott knew Plaintiff was innocent. As such, Plaintiff failed to offer sufficient evidence for the jury to conclude that Defendant McDermott was personally involved in any of the alleged constitutional violations.

## II. THE JURY'S VERDICTS ARE INCONSISTENT AND MUST BE REVERSED

### A. The Jury's Malicious Prosecution Verdict in Favor of McDermott is Inconsistent with the Jury's Verdicts on Plaintiff's Other Claims Against McDermott and Must be Reversed.

"As a rule, civil juries must return consistent verdicts." *Will,*776 F.2d at 677. A party claiming that inconsistent verdicts have been returned is not entitled to a new trial "unless no rational jury could have brought back" the verdicts that were returned. *Id.* at 678. A new trial on all claims is the appropriate remedy (rather than judgment as a matter of law) in a case in which the jury has returned inconsistent verdicts. *Deloughery*, 422 F.3d at 617.

Here, the jury's verdicts against McDermott are inconsistent. The jury found that McDermott did not maliciously prosecute Plaintiff. However, the jury also found McDermott fabricated Russell and Fernandez's identification of Plaintiff, withheld that evidence, lacked probable cause for Plaintiff's pretrial detention, and conspired with Defendant Folino in violation of Plaintiff's constitutional rights. Those conclusions are inconsistent and a rational jury could not have returned these necessarily conflicting verdicts. For instance, if the jury believed that Defendant McDermott fabricated evidence against Plaintiff, then the jury must have found that McDermott knew the evidence against Plaintiff was false. If the evidence against Plaintiff was false, then what would justify Defendant McDermott in pursuing a prosecution against

Plaintiff? There was no evidence presented for the jury to find Defendant McDermott could have believed Plaintiff committed the crime, if they also found he knowingly manipulated the evidence against him. Further, it stands to reason that Defendant McDermott could not simply be acting to bring the true perpetrator to justice, if, as the jury found, he also withheld material exculpatory evidence from him and conspired with Defendant Folino to violate Plaintiff's rights. As such, the jury's verdicts that Defendant McDermott did not maliciously prosecute Plaintiff but that he did fabricate Russell and Fernandez's identification of Plaintiff, withheld that evidence, and conspired with Defendant Folino to violate Plaintiff's constitutional rights are inconsistent and a rational jury could not have returned these necessarily conflicting verdicts.

> **B. The Jury's Verdict Against Folino for Malicious Prosecution is Inconsistent with the Jury's Finding in Favor of McDermott on that Charge and Must be Reversed.**

In the event this Court determines that Plaintiff adduced sufficient evidence to withstand the arguments set forth in Section I(D), above, the evidence presented against both Defendants was identical (except for the relentless, yet unproductive, speculative cross of Folino). In that case, the jury's malicious prosecution verdicts against Folino and in favor of McDermott would be inconsistent. The only evidence that distinguished Defendant McDermott's involvement from Defendant Folino's is that Abdul Wachaa became an informant for Defendant Folino years after Plaintiff's arrest. Yet, as addressed in Section I(C), above, there was no evidence Defendant Folino learned any information from Wachaa relevant to this case. But, even if the jury concluded he did, there was no evidence that Defendant McDermott was not also made aware of the information from Wachaa and knew the circumstances in which Defendant Folino obtained it. In light of the above, the jury's malicious prosecution verdicts regarding Defendants Folino and McDermott should be identical because the evidence presented against them in support of that

claim was the same. The jury's malicious prosecution verdicts are not identical and there is no way to reconcile them. Therefore, Defendant Folino is entitled to a new trial on Plaintiff's malicious prosecution claim.

### III. NO REASONABLE JURY COULD CONCLUDE THAT THERE WAS A LACK OF PROBABLE CAUSE TO CHARGE PLAINTIFF AS THE ACCOMPLICE IN THE PATEL HOMICIDE.

The existence of probable cause defeats Plaintiff's Fourth Amendment pretrial detention claim and his state law malicious prosecution claim.[4] *See Manuel v. City of Joliet,* 137 S. Ct. 911 (2017); *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 926 (7th Cir. 2001) (the existence of probable cause is an absolute bar to a malicious prosecution claim). Probable cause is a set of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 642 (1st Dist. 2002). The Seventh Circuit recognizes that if a reasonably credible witness or victim informs the police that someone has committed a crime, the officers have probable cause to make an arrest. *Matthews v. City of East St. Louis*, 675 F.3d 703, 707-08 (7th Cir. 2016); *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir.2007). This is so even when the suspect denies wrongdoing. *See, e.g., Reynolds v. Jamison*, 488 F.3d 756, 762 (7th Cir.2007). In fact, "where the victim of the crime supplies the police with the information forming probable cause, there is a presumption that this information is inherently reliable." *Sang Ken Kim v. City of Chicago*, 368 Ill. App. 3d 648, 655, 858 N.E.2d 569, 575 (1st Dist. 2006), *see also Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009).

Based on the jury's verdict in favor of Plaintiff on the fabricated evidence claim, the jury must have accepted Plaintiff's argument that Defendants fed the names of Plaintiff and Gomez to

---

[4] As reflected in the jury instructions, this Court has applied the standard for probable cause for both the illegal detention claim and the malicious prosecution claim.

Russell and Fernandez, knowing that they were innocent. But as addressed above, there is no evidence that Defendants fed the names to either witness or, even if Defendants were suggestive, that they knew Plaintiff and Gomez were not involved in the shooting. To the contrary, there is no evidence that Defendants had any reason to believe Plaintiff and Gomez were not the true offenders. For example, the evidence offered at trial regarding how Defendants identified Plaintiff and Gomez as suspects was the same for each. And, Plaintiff judicially admitted that Gomez was one of the people who attacked Fernandez and Russell. In light of that, it is implausible that the jury could find that Defendants knew Russell and Fernandez's identifications of Plaintiff was false when, based on the same evidence, Defendants were undeniably correct in their belief that their identifications of Gomez were true.

Additionally, Russell and Fernandez's testimony established that Defendants' belief that Plaintiff was involved in the shooting was reasonable and justified. Indeed, Russell and Fernandez both testified that they saw who committed the crime. (Ex. A, 861:16-862:13; Dkt. 315 at 92:9-16; 165:8-18). Russell testified that he recognized them by face and name, and Fernandez testified that Russell told him the offenders were Plaintiff and Gomez. (Ex. A, 861:16-862:13; Dkt. 315 at 99:23-101:14; 125:3-126:9; 128:9-14). And, Russell admitted that he told the police that Plaintiff was one of the people he saw on the bike that attacked him (Ex. A, 862:17-864:7). Russell's admission supports probable cause on its own. *See Tayborn v. Scott*, 251 F.3d 1125, 1131 (7th Cir. 2001) (victim's testimony at trial that his earlier identification of the shooter was inaccurate because he did not personally see defendant did not exonerate defendant but was merely cumulative of state's chief witness, who identified the attacker to the police). Russell tried to back off this testimony at trial by agreeing with Plaintiff's counsel's leading and suggestive questions - that "you did not see [Plaintiff] riding a bike on the night you were shot" (Ex. A 837:15-21) and

that "[the police] told you they thought they knew who shot you" (Ex. A 854:10-15) and that "the police told you who to say…and that you hadn't seen Rowdy and Gomez on the bike, right?" (879:11-17). Even so, that testimony did not change the fact that Plaintiff judicially admitted Gomez was involved in the shooting and therefore could not undermine Defendants' belief regarding Plaintiff's involvement in the jury's eyes.

Furthermore, there was no evidence that Defendants influenced the witnesses to make the identifications. Rather, Russell admitted he did not back off his identification of Plaintiff even when he had the opportunity to speak to Plaintiff's investigator, alone. And, neither Fernandez or Russell testified that they told the police prior to Plaintiff's criminal trial that Plaintiff and Gomez were *not* involved in the crime. Nor was there any evidence that Defendants received the names from Wachaa. But, even if they did, Plaintiff did not provide any evidence that receiving a "tip" from Wachaa gave Defendants reason to believe Russell and Fernandez's identifications were not true. Accordingly, there was no evidentiary basis for the jury to conclude that Defendants did not justifiably rely on Russell and Fernandez's identifications in pursuing charges against Plaintiff.

What's more, besides Russell and Fernandez, Defendants had additional evidence to establish probable cause. For instance, the investigation revealed that members of the Spanish Cobras were responsible for the crime, and Plaintiff admitted that he was a Spanish Cobra. Russell agreed to have his interview with ASA Gudino video recorded. (Ex. A 847:23-848:7; 868:11-869:13; 1257:7-1258:18). Both Russell and Fernandez testified under oath at the grand jury. (Ex. A 1541:1-4). Plaintiff lied to Defendants about whether he knew Gomez. (Ex. A 357:15-358:5). Plaintiff fled to Rochelle after he was initially released on August 5, 2009, suggesting consciousness of guilt. (Ex. A 378:25-379). And, the alibis Plaintiff provided were not substantiated. (Ex. A 1009:20-1018:22).

Because of the existence of probable cause, the jury's verdict in favor of Plaintiff on his pretrial detention claim and state law malicious prosecution claim were against the manifest weight of the evidence.

## IV. NO REASONABLE JURY COULD FIND DEFENDANTS LIABLE ON PLAINTIFF'S DERIVATIVE CLAIMS

Plaintiff's remaining claims are Section 1983 conspiracy and failure to intervene claims. These claims are derivative of his Section 1983 due process claim and his Fourth Amendment pretrial detention claim. For the reasons stated above, because the jury's finding on Plaintiff's due process claim and Plaintiff's Fourth Amendment pretrial detention claim were against the manifest weight of the evidence, the Court must make the same finding on the derivative claims. *See Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999) (holding the absence of any underlying violation of the Plaintiffs' constitutional rights precludes the possibility of succeeding on a conspiracy claim); *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (concluding that in order for there to be a failure to intervene, there must be an underlying constitutional violation).

In addition, Plaintiff's evidence was insufficient to establish his conspiracy claim because he did not present any evidence of any agreement between Defendant Folino and McDermott. There is no evidence that either one of them had any prior intention of violating Plaintiff's rights, much less that they talked about it or decided on it beforehand. Indeed, had McDermott intended to violate Plaintiff's rights or had he talked with Folino about doing so, his belief that Plaintiff was responsible for the shooting would have been unjustified. The jury found that his belief that Plaintiff was responsible was reasonable when they acquitted McDermott of malicious prosecution. For this reason, Plaintiff's conspiracy claim also fails.

## V. THE JURY'S AWARD FOR LOSS OF A NORMAL LIFE WAS UNSUPPORTED BY THE EVIDENCE.

Plaintiff asked the jury to award $1 million dollars in damages for loss of normal life. He characterized this category of damages as compensation for the injuries suffered after his release from custody, specifically asking the jury to find that he "still has not recovered" and that "life is no longer normal". The jury awarded Plaintiff $1 million dollars for loss of normal life, the exact amount Plaintiff requested. Yet, Plaintiff did not present evidence to warrant any amount of damages for loss of normal life, let alone an amount that large, and the Court should remit the amount.

When deciding whether to remit a jury verdict, the district court may consider whether that verdict is "monstrously excessive," if there is no rational connection between the verdict and the evidence presented at trial, and whether the award is roughly comparable to awards in similar cases. *Thompson v. Mem'l Hosp. of Carbondale,* 625 F.3d 394, 408 (7th Cir.2010). The "monstrously excessive" inquiry is "another way of asking whether there is a rational connection between the award and the evidence." *O'Sullivan v. City of Chicago,* 474 F.Supp.2d 971, 982 (N.D.Ill.2007). With respect to loss of normal life, an instruction for loss of normal life is often given when the instructions for disability do not adequately fit the circumstances or the injury suffered. *Ocampo v. Paper Converting Mach. Co.*, 02 C 4054, 2005 WL 2007144, at *1 (N.D. Ill. Aug. 12, 2005). Indeed, loss of normal life a component of a disability. *Stift v. Lizzadro*, 362 Ill. App. 3d 1019, 1028–29, 841 N.E.2d 126, 134 (1st Dist. 2005). Just like the temporary or permanent suffering a plaintiff is likely to suffer as a result of a disability, the purpose of loss of normal life damages is to compensate a plaintiff for a change in lifestyle. In that case, loss of normal life can only be awarded when the plaintiff has demonstrated an inability to enjoy the

pleasurable aspects of a life as a result of the harm suffered. *Smith v. Altman*, 12 C 4546, 2015 WL 5610670, at *3 (N.D. Ill. Sept. 21, 2015).

Regarding his life after incarceration, Plaintiff presented only limited evidence. He presented no experts or damages witnesses, so the only evidence came from his testimony. Plaintiff testified that he works at XSport, but does not enjoy it. (Ex. A, 222; 231). He also testified that after his release he was picked up by ambulances "like a hundred times". (Ex. A, 327). He testified that he was taken to the emergency room, but did not explain for what reason he was "picked up", the circumstances of those incidents, or tie it anyway to his allegations in this case at all. (Ex. A, 327). In any event, Plaintiff testified that had not happened to him in a very long time, and that the last time was four years ago. (Ex. A, 328). He also testified that he has taken Xanax, but did not explain for how long or for what purpose. Plaintiff did not provide any evidence of any mental health diagnosis. Finally, he testified vaguely that he has had trouble operating since his release. (Ex. A, 328). That testimony is the full scope of the evidence Plaintiff presented to support his loss of normal life damages.

On the other side of the scale, Plaintiff presented evidence that his life has actually improved since his release. Plaintiff explained that before his arrest he had issues with his family. (Ex. A 223). He said that he has not seen his mother since he was five years old. (*Id.*). He also testified that he did not have a relationship with his father before his arrest. (Ex. A 227-28). Plaintiff testified that he grew up in group homes, and that he would run away from them. (Ex. A 228). Plaintiff explained that before his arrest he did not go to school. (Ex. A 228-29). Instead, he spent his time "hanging out" and was a member of the Spanish Cobras street gang. (*Id.*). Additionally, before his arrest, Plaintiff did not have a steady place to live. (Ex. A 223). Since his release, however, he has lived with a roommate for nearly two years. (Ex. A 396). He has

20

been able to reconnect with his father. (Ex. A 227-28). He is employed and has had several jobs since his release. (Ex. A 222; 330). Finally, Plaintiff testified that he spends his free time working out, going to the movies, taking walks in the park or downtown. (Ex. A 231).

Cases in which Courts have found six-figure damages awards reasonable for loss of normal life are as different from this one as night and day. For example, in *Lawler v. MacDuff*, a medical negligence case, the defendant failed to properly diagnose plaintiff with cervical cancer, and, as a result, the plaintiff was forced to have a hysterectomy. *Lawler v. MacDuff*, 335 Ill. App. 3d 144, 155–56, 779 N.E.2d 311, 322 (2d Dist. 2002). The Court found that $1,200,000 in damages for loss of normal life was appropriate considering the plaintiff wanted to have a family and permanently lost the ability to ever conceive a child. *Id.* Likewise, in *Ocampo v. Paper Converting*, a products liability case, the plaintiff's hair got caught in a machine resulting in her scalp being torn from her head. *Ocampo*, 2005 WL 2007144, at *1. The Court found $1 million in loss of normal life damages reasonable. Because of her injury, the Court found, the plaintiff has to a wear a wig for the rest of her life, her ear is disfigured, and she cannot move her forehead. The plaintiff further provided evidence that she suffers from nightmares, avoids looking in mirrors, has sought psychiatric treatment, rarely goes out of the house, and is depressed. In another case, *Klingelhoets v. Charlton-Perrin*, the Court found $713, 601.82 a reasonable amount for damages for loss of normal life combined with pain and suffering and medical expenses. *Klingelhoets v. Charlton-Perrin*, 2013 IL App (1st) 112412, ¶ 22, 983 N.E.2d 1095, 1104. There, the plaintiff began to suffer marked cognitive, emotional, and physical difficulties. *Id.* She was confused, loss memory ability, had to change jobs, and suffered from depression. *Id.* She also had persistent sensitivity to light and sound, had difficulty sleeping, and tests revealed she had abnormalities in her brain requiring future treatment. *Id.*

By contrast, an amount of zero is reasonable when the plaintiff fails to present any evidence of any inability to enjoy life. For instance, in *Stift v. Lizzadro*, the Court found that the plaintiff failed to provide any evidence justifying damages for loss of normal life. *Stift*, 362 Ill. App. 3d at 1028–29.). Like Plaintiff, the plaintiff in *Stift* did not present any evidence of any ongoing pain or loss of normal life. The plaintiff merely testified that she had shortness of breath, missed one day work, but was otherwise employed. Likewise, in *Smith v. Altman*, the Court remitted an award of $300,000 for loss of normal life to just $30,000 considering the evidence bore little relationship to the amount awarded. *Smith*, 2015 WL 5610670, at *4. In that case, the Court found that the plaintiff gave no testimony about the inability to enjoy life besides some basic limitations to attend his children's extracurricular activities. In its reasoning, the Court compared the plaintiff's circumstances to several other cases involving plaintiffs who suffered permanent injuries, disabilities, or long-term pain, all examples of evidence missing from the plaintiff's case.

Just like the plaintiffs in *Smith* and *Stift*, Plaintiff presented no evidence of an inability to enjoy the pleasurable aspects of life or any ongoing disability, injury, or pain. He testified that he was "picked up" by ambulances, but did not explain what, if any, effect that had on his life or well-being. He testified that he takes Zanax, but did not explain what negative effect, if any, that medication has on him. Nor did he connect any mental health issue to the circumstances in this case, as opposed to issues he was suffering before his arrest. More to the point, with regard to things he enjoys in his life, he only testified to things he likes to do, like exercising, going for walks, and going to the movies. He did not offer any evidence of anything that he can no longer do as a result of his arrest and prosecution in this case. To the contrary, the evidence plaintiff presented shows that his life has improved since his release, given that he has reconnected with his father, is employed, and now has a steady place to live.

22

Certainly, the limited evidence Plaintiff presented does not warrant any damages for loss of normal life, let alone an amount as significant as $1 million. Because there is little to no connection between the evidence presented and the amount the jury awarded, the jury's decision must have been made based on a desire to punish Defendants, rather than to fairly compensate Plaintiff for his alleged injuries. For these reasons, remittitur is justified. Plaintiff's damage award for loss of normal life should be remitted to zero for failure to provide evidence to establish any award. In the alternative, the Court should remit the amount to something closer to the range awarded to the plaintiff in *Smith*, who offered the same limited evidence and the Court determined should only receive $30,000.

## CONCLUSION

WHEREFORE, Defendants Folino and McDermott respectfully requests this Honorable Court grant its Motion for A New Trial pursuant to Fed. R. Civ. P. 59(a) and for any other relief as it deems just and reasonable.

Dated:                                              Respectfully submitted,

                                                    John Folino & Timothy McDermott

Eileen E. Rosen                                     By: _____ /s/ *Eileen E. Rosen* _____
Stacy A. Benjamin                                          One of its attorneys
Catherine M. Barber
Andrew J. Grill
ROCK FUSCO & CONNELLY, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
(312) 494-1000
erosen@rfclaw.com